SEYFARTH SHAW LLP
Dana L. Peterson (SBN 178499)
dpeterson@seyfarth.com
John T. Ayers-Mann (SBN 348249)
jayers-mann@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
DEPLOYED SERVICES LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELL NEALEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DEPLOYED SERVICES, LLC, a Nevada limited liability company; MICHAEL DOMINIC, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **'24CV1041 MMA BLM**<br><br>(San Diego County Superior Court Case No. 37-2024-00021759-CU-WT-CTL)<br><br>**DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL**<br><br>Trial Date: None Set<br>Date Action Filed: May 10, 2024 |

DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant DEPLOYED SERVICES LLC ("Deployed" or "Defendant") hereby removes to this Court the above-captioned matter from the Superior Court of the State of California for the County of San Diego, to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1445, on the basis of diversity of citizenship jurisdiction. In support of this removal, Defendant states as follows:

**I.   BACKGROUND**

1. On May 10, 2024, Plaintiff filed a complaint in the Superior Court of the State of California, County of San Diego, entitled "*Cornell Nealey, an individual v. Deployed Services LLC, a limited liability company, and Michael Dominic, an individual, and Does 1 through 50, inclusive,*" designated Case No. 37-2024-00021759-CU-WT-CTL (the "Superior Court Action"). A true and correct copy of the Complaint from the Superior Court Action (the "Complaint") is attached as **Exhibit A** to the Declaration of John Ayers-Mann ("Ayers-Mann Decl." of "Ayers-Mann Declaration") filed herewith.

2. The Complaint asserts eleven causes of action for (1) Violation of Labor Code Section 1102.5; (2) Retaliation (Cal Gov't Code § 12940(h)); (3) Intentional Infliction of Emotional Distress; (4) Wrongful Termination in Violation of Public Policy; (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200); (6) Failure to Pay All Overtime Wages (Labor Code §§ 204 510, 551, 552, 558, 1194, and 1198); (7) Meal Period Violations (Labor Code §§ 226.7, 512); (8) Rest Period Violations (Labor Code §§ 226.2, 226.7, and 516); (9) Failure to Provide Accurate Itemized Wage Statements (Labor Code § 226 *et seq*); (10) Waiting Time Penalties (Labor Code § 201-203); (11) Failure to Reimburse for Necessary Business Expenses (Labor Code § 2802).

3. On May 16, 2024 Deployed Services LLC received, via electronic mail from counsel for Plaintiff, a copy of the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment, Alternate Dispute Resolution Information Package, and a copy of a Notice of Acknowledgment and Receipt. A true and correct copy of the complete service packet, and all other documents filed and served to date, is attached as **Exhibit B** to the Ayers-Mann Decl.

4. Deployed, through its counsel, executed the Notice and Acknowledgment of Receipt on June 5, 2024. Ayers-Mann Decl. ¶ 4, Ex. B. In accordance with the Notice and Acknowledgement of Receipt and California law, "service of [the] summons is deemed complete" on June 5, 2024. *Id.* at Ex. B.

5. On June 14, 2024, Defendant Deployed filed an Answer and Affirmative Defenses to the Complaint. Ayers-Mann Decl. ¶ 3.

6. Prior to the filing of this Notice of Removal, Dominic had not been served with any pleading or papers and Deployed has not filed or been served with any other pleadings of papers in the Superior Court Action other than the documents attached as Exhibit B of the Ayers-Mann Declaration. *See* Ayers-Mann Decl., ¶ 5.

## II. TIMELINESS OF REMOVAL

7. The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

8. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210

(5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.") Deployed's 30-day time limit to remove is triggered by Plaintiff's service of the Summons and Complaint effective the date that the Notice of Acknowledgment of Receipt was signed on June 5, 2024.  *See Murphy Bros, Inc.,*  526 U.S. at 347-48 (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"). Where service is effected by the execution of a Notice and Acknowledgment of Receipt, service of process is effective on the date that the Notice and Acknowledgment of Receipt is signed by the Defendant. *Adams v. Grossmont Cuyamaca Community Coll. Dist.*, 2024 WL 1146642 (S.D. Cal. Mar. 15, 2024).

9. Thirty (30) days from the service of the Complaint on Deployed on June 5, 2024 is Friday, July 5, 2024 .

10. This Notice of Removal is timely because it is filed within 30 days of service on of the Complaint by Notice and Acknowledgment of Receipt on Deployed on June 5, 2024, as computed pursuant to the Federal Rules of Civil Procedure. *See*  Fed. R. Civ. P. 6(a); 28 U.S.C. § 6103(a).

### III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

11. The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1).  As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. § 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

#### A. Plaintiff Is A Citizen Of California

12. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520

1  (10th Cir. 1994) (holding that "the place of residence is prima facie [evidence of]
2  domicile").

3  13.  Here, Plaintiff's allegation in the Complaint that he is a resident of the State of California is *prima facie* evidence of domicile, and therefore Plaintiff is a citizen of the State of California.  The Complaint alleges that, "Plaintiff CORNELL NEALEY at all relevant times mentioned herein was an individual residing in the State of California performing work for the benefit of Defendant DEPLOYED SERVICES, LLC as a California employee in the State of California" (*See* **Ex. A,** Compl., ¶ 1.)

9  14.  In addition, Defendant's review of Plaintiff's personnel file reveals that Plaintiff resides in California. (Declaration of Daryl Whitaker, ("Whitaker Decl."), ¶ 4.)  He submitted a signed W-4 listing his address in El Cajon, California, as well as an EDD employee's withholding allowance certificate reflecting the same address in El Cajon, California.  ("Whitaker Decl.) ¶ 4.)

14  15.  Plaintiff, therefore, is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

**B.    Defendant Deployed Is Not a Citizen of California**

17  16.  Deployed is and was at the time of the filing of this action a citizen of a state other than California within 28 U.S.C. §1332(c)(1).  Limited liability companies are unincorporated associations for purposes of 28 U.S.C. §1332. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens").

22  17.  At all times since Plaintiff commenced this lawsuit, Defendant Deployed Services LLC's four members have been the Robert Napior Revocable Trust, the Robert Napior 2020 GST Exempt Trust, Richard Stapleton and the Richard H. Stapleton Irrevocable Trust.  (Napior Decl., ¶ 2; Stapleton Decl. ¶ 2.)

26  18.  At all times since Plaintiff commenced this lawsuit, Richard Stapleton has maintained a residence, been registered to vote, and been domiciled in the state of Florida.

28

4

DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

1  Accordingly, Richard Stapleton is a citizen of the state of Florida. (Declaration of Richard Stapleton at ¶ 3.)

19. At all times since Plaintiff commenced this lawsuit, Karen Stapleton has been the sole trustee of the of the Richard H. Stapleton Irrevocable Trust. At all times since Plaintiff commenced this lawsuit on May 10, 2024, Ms. Stapleton has been a resident of the state of Florida and registered to vote in the state of Florida. (Stapleton Decl. ¶ 4).

20. At all times since Plaintiff commenced this lawsuit, Robert Napior has been the sole trustee of the Robert Napior Revocable Trust and has maintained a residence, been registered to vote, and been domiciled in the state of Florida. Accordingly, Robert Napior and the Robert Napior Revocable Trusts are citizens of the state of Florida. (Declaration of Robert Napior at ¶ 3.).

21. At all times since Plaintiff commenced this lawsuit, the sole trustee of the Robert Napior 2020 GST Exempt Trust is Hemenway Trust Company LLC. (Napior Decl. ¶ 4; Declaration of Charles Platt ¶ 2).

22. At all times since Plaintiff commenced this lawsuit, the sole member of the Hemenway Trust Company LLC has been H&B PTC LLC. (Platt Decl. ¶ 4).

23. At all times since Plaintiff commenced this lawsuit, all members of H&B PTC LLC have resided in the state of Massachusetts. (Platt Decl. ¶ 4). Therefore, H&B PTC LLC and Hemenway Trust Company LLC are citizens of the state of Massachusetts. Accordingly, the Robert Napior 2020 GST Exempt Trust is a citizen of the state of Massachusetts.

24. Accordingly, all of Deployed Services LLC's members are citizens of the state of Florida or Massachusetts, and Deployed Services LLC is a citizen of the State of Florida and Massachusetts.

C.   **Defendant Michael Dominic Is Not a Citizen of California**

25. Contrary to the allegations in Plaintiff's Complaint, Michael Dominic is not a citizen of the State of California.

5
DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

26. At all times since Plaintiff commenced this lawsuit, Michael Dominic has maintained a residence, been registered to vote, and been domiciled in the state of Florida. (Declaration of Michael Dominic ¶ 3–5).

27. Michael Dominic is not an employee of Deployed Services, LLC and does not maintain a permanent residence in the state of California. (Dominic Decl. ¶ 2–3).

28. Accordingly, Dominic is a citizen of the State of Florida.

### D. Doe Defendants May Be Disregarded

29. Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants, 1-50, does not deprive this Court of jurisdiction.

## IV. AMOUNT IN CONTROVERSY

30. While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-04 (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal quotations and citations omitted).

31. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

32. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

33. Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy well exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

### A. Plaintiff's Claims Otherwise Exceed $75,000

34. Courts routinely find removal appropriate in employment discrimination and retaliation cases, even when the alleged lost wages do not exceed the jurisdictional amount at the time of the removal, because of the possibility of substantial punitive damages, emotional distress damages and attorneys' fee awards.

35. The amount in controversy requirement is satisfied because "it is more likely than not" that Plaintiff's claims exceed the jurisdictional minimum based on the allegations in Plaintiff's Complaint. *See Sanchez*, 102 F.3d at 404 ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted). Therefore, Defendant needs to show only that there is a "reasonable probability that the stakes exceed," $75,000. *See Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir. 2005). A defendant is not obliged to research, state and prove Plaintiff's claims for

1  damages. *Singer v. State Farm Mut. Auto Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997). A
2  defendant can establish the amount in controversy by the allegations in the Complaint, or
3  by setting forth facts in the notice of removal that demonstrate that the amount placed in
4  controversy by Plaintiff exceeds the jurisdictional minimum. *Id*.

5  36. Here, without admitting the validity of Plaintiff's causes of action (all of
6  which are expressly denied by Defendant), the amount in controversy is in excess of
7  $75,000, exclusive of interest and costs. Although Plaintiff does not pray for a specific
8  dollar amount, in his Complaint, he alleges eleven (11) claims for: (1) Violation of Labor
9  Code Section 1102.5; (2) Retaliation (Cal Gov't Code § 12940(h)); (3) Intentional
10 Infliction of Emotional Distress; (4) Wrongful Termination in Violation of Public Policy;
11 (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200); (6) Failure to Pay All
12 Overtime Wages (Labor Code §§ 204 510, 551, 552, 558, 1194, and 1198); (7) Meal
13 Period Violations (Labor Code §§ 226.7, 512); (8) Rest Period Violations (Labor Code
14 §§ 226.2, 226.7, and 516); (9) Failure to Provide Accurate Itemized Wage Statements
15 (Labor Code § 226 *et seq*); (10) Waiting Time Penalties (Labor Code § 201-203); (11)
16 Failure to Reimburse for Necessary Business Expenses (Labor Code § 2802). *See* Ayers-
17 Mann Decl., **Ex. A**, Compl., ¶¶ 28-32, 33-37, 38-41, 42-47, 48-52, 53-57, 58-60, 61-64,
18 65-68, 69-72, and 73-77; Prayer ¶¶ A-N). Thus, it is more likely than not that the amount-
19 in-controversy for Plaintiff's claims exceed $75,000, as demonstrated below.

20 37. In establishing the amount in controversy, this burden "is not 'daunting,' as
21 courts recognize that under this standard, a removing defendant is not obligated to
22 'research, state, and prove the plaintiff's claims for damages.'" *Id*. at 1204-05. When
23 determining whether a civil action exceeds the $75,000 jurisdictional amount in
24 controversy requirement, the Court looks to "facts presented in the removal petition as
25 well as any summary-judgment-type evidence relevant to the amount-in-controversy at
26 the time of removal." *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090
27 (9th Cir. 2003); *Labastida v. McNeil Technologies, Inc*. (S.D. Cal., Feb. 25, 2011, No.
28

8
DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

10CV1690-MMA CAB) 2011 WL 767169, at *3. The Court must presume the plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability.")). Accordingly, general, special, compensatory, and punitive damages, and attorneys' fees that are recoverable by statute may all be included in the jurisdictional amount in controversy calculation. *See, e.g., Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) ("Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract. [citations]"); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract." (citing *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998)); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155, 1156 (9th Cir. 1998).

### B. Lost Earnings and Other Employment Benefits

38. At the time of his separation, Plaintiff earned hourly compensation at a rate of $21.20 per hour. (Whitaker Decl., ¶ 6.) Given that Plaintiff alleges that he was terminated on or about October 25, 2023, his allegations reflect over 31 weeks of lost earnings to date. (Ex. A, Compl. ¶ 18–19.)

39. Based on Plaintiff's allegations, should Plaintiff prevail, it is more likely than not that he will recover over $75,000 in damages as there have been, in recent years, several verdicts in discrimination, retaliation, and wrongful termination cases entered in favor of plaintiffs in California where the awarded damages exceeded $75,000. *See, e.g.*, *Hoeper v. City and County of San Francisco*, CGC-15-543553, 2017 WL 1136098 (San Francisco County Sup. Ct. Mar. 17, 2017) ("jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress,

1  mental anguish and humiliation"); *Sargent v. Board of Trustees of Cal. State Univ.*, 2017 WL 2617753 (Sonoma County Sup. Ct. Mar. 15, 2017) ("jury found in favor of Sargent on his whistleblower retaliation claim, awarding him $152,980 in past economic damages, $118,915 in future economic damages"); *Carroll v. Armstrong*, 34-2012-00135527-CU-OE-GDS, 2016 WL 7094518 (Sacramento County Sup. Ct. Aug. 10, 2016) ("jury found for the plaintiff and awarded her $481,225.00 for past lost earnings, $932,200 for future lost earnings, $681,103 for future pension plan benefits, and $750,000 for emotional distress, pain and suffering"); *Hawkins v. City of Los Angeles*, 2016 WL 8649664, VX541066, (Los Angeles County Sup. Ct. Jun. 17, 2016) (plaintiff "was awarded $88,531 in economic damages and $150,000 in non-economic damages"); *Watson v. Janssen Pharmaceuticals Inc.et al.*, Case No. BC696761, 2022 WL 20508720, (November 9, 2022 verdict) ($870,215 on plaintiff's claims for disability discrimination and retaliation in violation of FEHA based on protected CRFA entitlement); *Young v. Dept. of Public Social Servs.*, Case No. BC609911, 2022 WL 20306677 (October 26, 2022 verdict) ($3,500,000 verdict on plaintiff's claims for retaliation in violation of FEHA and whistleblower retaliation.); *Whithorn v. City of West Covina*, Los Angeles Superior Court, Case No. 20STCV08916, 2023 WL 4890639 (May 5, 2023 verdict) ($4,145,595 verdict on plaintiff's claims for age discrimination, disability discrimination, retaliation for taking medical leave, and wrongful termination for taking medical leave for his disabilities). Plaintiff's allegations that he was retaliated against and terminated because of whistleblowing activity are similar to the issues in these cases.

40. Defendant has attached these verdict reports as **Exhibit C** to the concurrently filed Declaration of John Ayers-Mann for the Court's review.

**C. Emotional Distress Damages**

41. Plaintiff's Complaint alleges that he suffered "emotional distress" (*See* Ex. A, Compl., ¶¶ 22, 36, 40, Prayer at ¶ A.) Plaintiff further alleges Defendant's acts were deliberate and intentional and caused Plaintiff "humiliation, shame, and embarrassment."

*Id* at 50 and 58.  Plaintiff's claims for these emotional distress damages adds thousands of dollars to the amount in controversy.  A review of jury verdicts in California demonstrates emotional distress awards in retaliation and wrongful termination cases commonly exceed $75,000.  *E.g.*, *Jang v. County of Los Angeles*, 2023 WL 7487466 (Los Angeles Sup. Ct.) (jury awarded $150,000 for emotional distress in FEHA and § 1102.5 retaliation verdict); *Astudillo v. Prats Inc.*, 2023 WL 11156548 (Los Angeles Sup. Ct.) (jury awarded $80,000 in emotional distress in FEHA retaliation and wrongful termination case); *Argueta v. North Ranch Bodycraft & Glass, Inc.*, 2022 WL 19330729 (Los Angeles Sup. Ct.) (awarding $100,000 in damages for pain and suffering in FEHA retaliation and wrongful termination case); *Ortega v. Carson Wild Wings LLC*, 2020 WL 1812491 (Los Angeles Sup. Ct.) (awarding $128,000 in damages for pain and suffering in wrongful termination and § 1102.5 retaliation case).

42.  Plaintiff's allegations of emotional distress are similar to the issues raised in these cases.  Defendant has attached these verdict reports as **Exhibit C** to the concurrently filed Declaration of John Ayers-Mann for the Court's review.

### D. Plaintiff's Claims for Unpaid Overtime

43.  For Plaintiff's sixth cause of action, Plaintiff alleges that "Plaintiff worked countless hours of overtime during his employment with Defendant that went wholly uncompensated." (Ex. A, Compl. ¶ 23).

44.  To that end, Plaintiff alleges that he "Defendants thought that they could somehow circumvent weekly overtime requirements by rolling over hours to the next week." (Ex. A, Compl. ¶ 23).

45.  As a result, Plaintiff alleges "if Plaintiff worked Monday through Friday on a given week, then once he clocked out for his meal period on Friday, the rest of the hours he worked during the shift would not be credited towards that weeks' hours worked, but rather hours work for the following week." (Ex. A, Compl. ¶ 23).

11
DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

46. Thus, Plaintiff concludes "[t]he foregoing policies and practices are unlawful and create entitlement to recovery by Plaintiff in a civil action for the unpaid amount of overtime premiums owing, including interest thereon, statutory and civil penalties, and attorneys' fees and costs of suit according to California Labor Code §§ 204, 510, 558, 1194, and 1198, the IWC Wage Orders, and Code of Civil Procedure § 1021.5." (Ex. A, Compl. ¶ 57).

47. During the alleged dates of Plaintiff's employment from February 9, 2023 to October 23, 2023, Plaintiff worked approximately 36 weeks. Plaintiff alleges that he "worked countless hours of overtime during his employment." Compl. ¶ 25. Assuming Plaintiff failed to receive overtime premium pay for three hours each workweek and was paid at an overtime premium rate of $31.80 per hour, Plaintiff's unpaid overtime claim damages during his employment would be approximately $1,144.80. [$10.60 x 3 hours x 36 weeks].

### E. Plaintiff's Claims for Meal Period Violations

48. For Plaintiff's seventh cause of action, Plaintiff contends that "Defendants also failed to provide Plaintiff with a compliant first meal period when he worked shifts in excess of 6.0 hours. Plaintiff **rarely, if ever,** was entitled to exercise the use of a timely, duty-free, legally compliant thirty-minute uninterrupted meal period despite **always working at least 6.0 hours in a day**." (Ex. A, Compl. at ¶ 25.)

49. Plaintiff alleges that "Defendants are responsible for paying premium compensation for meal period violations including interest thereon, as well as statutory penalties, civil penalties, and costs of suit, pursuant to Labor Code §§ 226.7, 512, and 558, the IWC Wage Orders, and Civil Code §§ 3287(b) and 3289." (Ex. A, Compl. at ¶ 60).

50. During the alleged dates of Plaintiff's employment from February 9, 2023 to October 23, 2023, Plaintiff worked approximately 36 weeks. Plaintiff alleges that he "rarely, if ever, was entitled to exercise the use of a timely, duty-free, legally compliant

12
DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

thirty-minute uninterrupted meal period." Compl. ¶ 25. Assuming Plaintiff worked at least three days per week without receiving a meal period and would be entitled to a meal premium of $21.20 per hour for each purported violation, Plaintiff's meal period damages during his employment would be approximately $2,289.60. [$21.20 x 3 violations x 36 weeks].

### F. Plaintiff's Claims for Rest Period Violations

51. For plaintiff's eighth cause of action, Plaintiff alleges that "Plaintiff cannot ever recall ever receiving a rest period, the only breaks he ever had during his shifts were the few meal periods that he was provided." (Ex. A, Compl., ¶ 24.)

52. Plaintiff further claims Defendant "[t]he foregoing violations create an entitlement to recovery by Plaintiff in a civil action for the unpaid rest period wages and the amount of rest period premiums owing, including interest thereon, as well as statutory penalties, civil penalties, and costs of suit according to California Labor Code §§226.2, 226.7, 516, 558, and Civil Code §§ 3287(b) and 3289." (Ex. A, Compl., ¶ 64.)

53. During the alleged dates of Plaintiff's employment from February 9, 2023 to October 23, 2023, Plaintiff worked approximately 36 weeks. Plaintiff alleges that he "rarely, if ever, was entitled to exercise the use of a timely, duty-free, legally compliant thirty-minute uninterrupted meal period." Compl. ¶ 25. Assuming Plaintiff failed to receive a compliant rest period on three occasions each workweek and was paid a rest period premium of $21.20 per hour for each purported violation, Plaintiff's meal period damages during his employment would be approximately $2,289.60 [$21.20 x 3 violations x 36 weeks].

### G. Plaintiff's Claims for Failure to Provide Itemized Wage Statements

54. For Plaintiff's ninth cause of action, Plaintiff alleges that Defendants "knowingly and intentionally, as a matter of uniform practice and policy, failed to furnish Plaintiff with accurate, itemized wage statements…" (Ex. A, Compl., ¶ 66.)

13
DEFENDANT DEPLOYED SERVICES LLC'S NOTICE OF REMOVAL
CASE NO. _____

311549155v.2

55.     Based on this alleged violation, Plaintiff claims that he is entitled to "damages and/or penalties pursuant to Labor Code § 226, including statutory and civil penalties, reasonable attorneys' fees, and costs according to suit…" (Ex. A, Compl. ¶ 68.)

56.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code § 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). Because Plaintiff filed his Complaint on May 10, 2024, the statutory period for the claim under California Labor Code § 226 runs from May 10, 2023 to October 23, 2023.

57.     During the limitations period beginning on May 10, 2023 and running through October 23, 2023, there were 24 weekly pay periods. (*See* Whitaker Decl., ¶ 7.) When assessing a $50 penalty for the initial wage statement violation and $100 for each subsequent wage statement violation, the amount in controversy for this claim would equal no less than $2,350 [($50 for the first pay period) + ($100 for each of the subsequent 23 pay periods)].

### H.     Plaintiff's Claims for Waiting Time Penalties

58.     For Plaintiff's tenth cause of action, Plaintiff alleges that "[d]efendants failed to timely pay Plaintiff all final wages due to them at the time of his separation including, among other things, unpaid amounts for underpaid overtime wages owed, and meal and rest period premium wages" (Ex. A, Compl., ¶ 71.)

59.     Based on these allegations, Plaintiff seeks to recover waiting time penalties "up to thirty (30) days from the time the wages were due." (Ex. A, Compl., ¶ 72.)

60.     Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. See Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at

the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

61. Here, Plaintiff earned an hourly rate of pay of $21.20, and assuming that he is owed eight hours of pay per day for the maximum penalty of 30 days, the alleged amount in controversy for the claim of waiting time penalties would be approximately $5,088. [$21.20 x 8 hours x 30 days].

### I. Attorney's Fees and Costs Also Could Exceed $75,000

62. Plaintiff claims that he is entitled to attorneys' fees and costs. (*See* Ayers-Mann Decl.,Ex. A, Compl., ¶¶ 57, 68, 72, 76, Prayer, at ¶ E). Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

63. Courts have also awarded far in excess of $75,000.00 in attorneys' fees in cases involving employment-related claims. *See, e.g., Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorneys' fees award of $490,000 for claims).

64. Defendant has attached these verdict reports as **Exhibit C** to the concurrently filed Declaration of John Ayers-Mann for the Court's review.

65. Defendant anticipates depositions being taken in this case, and that ultimately, Defendant will file a Motion for Summary Judgment. Based on defense counsel's experience, attorneys' fees in wrongful termination, retaliation, and wage-and-hour cases for these types of activities would exceed $75,000. In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000.00 if the case proceeds to trial. (Ayers-Mann Decl., ¶¶ 7–8.)

### J. Punitive Damages

66. Finally, the Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy. *Davenport*, 325 F.2d 785, 787 (punitive damages must be taken into account where recoverable under state law). (*See* Ex. A, , Compl., ¶¶ 32, 37, 41, 45–46, Prayer at ¶ C.)

67. Plaintiff's employer, Defendant Deployed Services, LLC, is a large entity. The economic resources of the defendant and the amount of compensatory damages are two of three factors courts consider in arriving at punitive damage awards. *See, e.g., Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 417 (2000) (finding "three factors relevant to the assessment of punitive damages: (1) the degree of reprehensibility of the act; (2) the amount of compensatory damages awarded; and (3) the wealth of the particular defendant."). In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 427-28 (2003), the Court held that: "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award . . . That does not make its use [in determining the constitutionality of punitive damage awards] unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors. . . ." (internal citations omitted). Therefore, the request for punitive damages weighs in favor of establishing the amount in controversy.

68. Courts have affirmed jury verdicts in cases with claims similar to Plaintiff's claims often exceed $75,000, especially when they include punitive damages, which Plaintiff also seeks. *See, e.g., Aboulida v. GACN Inc.*, 2013 WL 811991 (Los Angeles Sup. Ct.) (award of $1,000,000 in punitive damages in discrimination case); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal.) (jury awarded $9,687,400 in punitive damages to six employees in discrimination and retaliation action).

69. Based upon the allegations contained in the Complaint, Defendant is informed and believes that Plaintiff seeks damages within the jurisdictional authority of

this Court. Because diversity of citizenship exists between Plaintiff and Defendant, and the matter in controversy between the parties is in excess of $75,000.00, this Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1). This action is therefore a proper one for removal to this Court.

## V.    VENUE

43.    The County of San Diego lies within the jurisdiction of the United States District Court, Southern District of California.

44.    Therefore, without waiving the Defendant's right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 84(d), 1441(a), and 1446(a). This Court is the United States District Court for the district within which the Superior Court Action is pending. Thus, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## VI.    SERVICE OF NOTICE OF REMOVAL ON STATE COURT

45.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Diego, as required under 28 U.S.C. § 1446(d).

46.    This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

47.    In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as **Exhibits A and B** to the Ayers-Mann Decl.

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

| | | |
|---|---|---|
| 1 | DATED: June 14, 2024 | Respectfully submitted, |
| 2 | | SEYFARTH SHAW LLP |

By: */s/ John T. Ayers-Mann*
　　　Dana L. Peterson
　　　John T. Ayers-Mann
　　　Attorneys for Defendants
　　　DEPLOYED SERVICES LLC