1  SEYFARTH SHAW LLP
   Dana L. Peterson (SBN 178499)
2  dpeterson@seyfarth.com
   John T. Ayers-Mann (SBN 348249)
3  jayers-mann@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:  (310) 277-7200
5  Facsimile: (310) 201-5219

6  Attorneys for Defendants
   DEPLOYED SERVICES LLC
7

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  CORNELL NEALEY, an individual,          Case No. **'24CV1041 MMABLM**

13            Plaintiff,                     (San Diego County Superior Court Case
                                            No. 37-2024-00021759-CU-WT-CTL)
14       v.
                                            **DECLARATION OF JOHN T.**
15  DEPLOYED SERVICES, LLC, a Nevada        **AYERS-MANN IN SUPPORT OF**
    limited liability company; MICHAEL      **NOTICE OF REMOVAL**
16  DOMINIC, an individual; and DOES 1
    through 50, inclusive,                   Trial Date: None Set
17                                           Date Action Filed:    May 10, 2024
             Defendants.
18

19

20

21

22

23

24

25

26

27

28

311554756v.1

I, John Ayers-Mann, declare and state as follows:

1. I am an attorney duly licensed to practice in the Southern District of California and am an associate with the law firm of Seyfarth Shaw LLP, attorneys of record for Defendant Deployed Services LLC ("Defendant" or "Deployed") and Michael Dominic ("Dominic") in this action. I submit this declaration in support of Defendant's Notice of Removal. I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

2. On or around May 10, 2024, Plaintiff filed a complaint in the Superior Court of the State of California, County of San Diego, entitled "*Cornell Nealey, an individual vs. Deployed Services, LLC, a Nevada limited liability company, Michael Dominic, an individual; and Does 1 through 50 inclusive[,]*" designated Case No. 37-2024-00021759-CU-WT-CTL (the "Superior Court Action"). A true and correct copy of the Complaint from the Superior Court Action (the "Complaint") is attached hereto as **Exhibit A**.

3. In my capacity as counsel for Deployed, on May 16, 2024, I received, via electronic mail from counsel for Plaintiff, a copy of the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment, Alternate Dispute Resolution Information Package, and a copy of a Notice of Acknowledgment and Receipt. On June 14, 2024, Defendants Deployed filed an Answer and Affirmative Defenses to the Complaint. A true and correct copy of the complete service packet, the executed notice of acknowledgment and receipt, and Deployed's Answer and Affirmative Defenses are attached as **Exhibit B**.

4. On June 5, 2024, I executed the Notice and Acknowledgment of Receipt on behalf of Deployed Services. A true and correct copy of the executed Notice and Acknowledgment of Receipt is attached hereto with **Exhibit B**.

5. Prior to the filing of this Notice of Removal, Deployed has not filed or been served with any other pleadings or papers in the Superior Court Action other than the documents attached as Exhibit B of the Ayers-Mann Declaration.

311554756v.1

6.     Attached hereto as **Exhibit C** are true and correct copies of verdict reports for cases that raise issues similar to Plaintiff's allegations.

7.     I anticipate depositions being taken in this case and that ultimately Defendant will file a Motion for Summary Judgment.  Based on my experience, attorneys' fees in employment discrimination cases often exceed $75,000.  In this regard, it is more likely than not that the fees in this case will exceed $75,000 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial.

8.     I anticipate that in addition to having already prepared the Complaint, Plaintiff's attorneys in this case will have to engage in the following activities to litigate this matter: preparing the Plaintiff for deposition; defending Plaintiff's deposition; preparing and responding to written discovery; preparing for and taking depositions of defense witnesses; and opposing a motion for summary judgment.  Based on defense counsel's experience, attorneys' fees in wrongful termination, retaliation, and wage-and-hour cases for these types of activities would exceed $75,000.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 14th day of June, 2024 in Los Angeles, California.


Dated:  June 14, 2024                    By: */s/ John T. Ayers-Mann*
                                              John T. Ayers-Mann

AYERS-MANN DECLARATION ISO NOTICE OF REMOVAL
CASE NO. _____

311554756v.1

# EXHIBIT A

STANSBURY BROWN LAW, PC
Daniel J. Brown (Bar No. 307604)
Ethan C. Surls (Bar No. 327605)
2610 ½ Abbot Kinney Blvd.
Venice, CA 90291
Telephone: (323) 204-3124
dbrown@stansburybrownlaw.com
esurls@stansburybrownlaw.com

Attorneys for Plaintiff
CORNELL NEALEY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/10/2024** at 11:35:45 AM

Clerk of the Superior Court
By Danielle Cortez, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| CORNELL NEALEY, an individual,<br><br>  *Plaintiff*,<br><br>  vs.<br><br>DEPLOYED SERVICES, LLC, a Nevada limited liability company; MICHAEL DOMINIC, an individual; and DOES 1 through 50, inclusive,<br><br>  *Defendants*. | Case No. 37-2024-00021759-CU-WT-CTL<br><br>**COMPLAINT**<br><br>(1) Violation of Labor Code Section 1102.5.<br>(2) Retaliation (Cal. Gov't Code § 12940(h));<br>(3) Intentional Infliction of Emotional Distress;<br>(4) Wrongful Termination in Violation of Public Policy;<br>(5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200);<br>(6) Failure to Pay All Overtime Wages (Labor Code §§ 204, 510, 551, 552, 558, 1194, and 1198);<br>(7) Meal Period Violations (Labor Code §§ 226.7, 512);<br>(8) Rest Period Violations (Labor Code §§ 226.2, 226.7, and 516);<br>(9) Failure to Provide Accurate Itemized Wage Statements (Labor Code § 226 *et seq*);<br>(10) Waiting Time Penalties (Labor Code §§ 201-203)<br>(11) Failure to Reimburse for Necessary Business Expenses (Labor Code § 2802)<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**EXHIBIT A**

COMES NOW, Plaintiff CORNELL NEALEY ("Plaintiff"), an individual, hereby brings this Complaint ("Complaint") against Deployed Services, LLC, a Nevada limited liability company; Michael Dominic, an individual; and DOES 1 through 50, inclusive, (collectively "Defendants"), and on information and belief alleges as follows:

## PARTIES

1. Plaintiff CORNELL NEALEY at all relevant times mentioned herein was an individual residing in the State of California performing work for the benefit of Defendant DEPLOYED SERVICES, LLC as a California employee in the State of California.

2. Plaintiff is informed and believes, and thereupon alleges that Defendant DEPLOYED SERVICES, LLC, is, and at all relevant times mentioned herein was, a Nevada limited liability company doing business in the State of California.

3. Plaintiff is informed and believes, and thereupon alleges that Defendant MICHAEL DOMINIC, is, and at all relevant times mentioned herein was, an individual employee of Defendant DEPLOYED SERVICES, LLC, residing in the State of California.

4. Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct alleged herein of the defendants sued as DOES 1 through 50, inclusive, but is informed and believes that these defendants are legally responsible for the conduct alleged in this complaint and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

5. Plaintiff is informed and believes that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent in this complaint, and that the acts of each defendant are legally attributable to each of the other defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction to hear this case because Plaintiff is informed and believes that the monetary damages and restitution sought in this complaint for Defendants' conduct exceeds the minimal jurisdictional limits of the Superior Court.

**EXHIBIT A**

7. Venue is proper in this judicial district, pursuant to California Code of Civil Procedure section 395(a) and 395.5 in that liability arose in San Diego County because at least some of the transactions that are the subject matter of this complaint occurred therein and/or each defendant is found, maintains offices, transacts business and/or has an agent therein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Prior to the initiation of this lawsuit, Plaintiff filed a complaint against each named defendant with the California Department of Fair Employment and Housing (DFEH) pursuant to California Government Code section 12900, *et seq.*, alleging the claims described in this complaint. On May 8, 2024 the DFEH issued a "right to sue" letter. A true and correct copy of the administrative complaint and the "right to sue" letter is attached as Exhibit A. All conditions precedent to the institution of this lawsuit have been fulfilled. This action is filed within one year of the date that the DFEH issued its right to sue letter.

## FACTUAL ALLEGATIONS

### A. WHISTLEBLOWER RETALIATION/ WRONGFUL TERMINATION

9. Plaintiff commenced work with Defendants around February 9, 2023 in the position of Field Supervisor (Porter II). Plaintiff's job duties generally revolved around ensuring that Border Patrol officers and detained migrants were taken care of. He essentially acted as a conduit between the officers, the migrants, and the various departments at the San Diego Border Patrol Detention Facility at 7461 Pogo Row ensuring that everybody's needs were met (i.e. food, cleaning, medicine, etc), in addition to duties of generally overseeing the facility and ensuring all rules/protocols were adhered to.

10. Plaintiff generally worked without issue between February-September 2023. He excelled in his position. He got along with his coworkers, was an effective supervisor, and was integral to Defendants' operations.

///
///
///

## Plaintiff Makes a Whistleblower Complaint Regarding Another Supervisor Sexually Harassing a Subordinate Employee

11.    Around the week of September 4, 2024, a housekeeping employee named Marlene Leyva approached Plaintiff at the facility distraught and in tears. Plaintiff asked what was wrong, to which Ms. Leyva stated, "I know you're a supervisor, could you help me? I have been going through this situation and it feels like sexual harassment." Plaintiff immediately obliged, stating that of course he would help and asked Ms. Leyva to further explain the details of her situation. Ms. Leyva then described that another supervisor, Edgar "Jacob" Eguiza, had been going around the facility and displaying nude photos and videos of her to other male employees without her consent. Essentially, Ms. Leyva was describing that she was the victim of "revenge porn" in the workplace and that it was causing her intense distress. Ms. Leyva then expressed to Plaintiff that she had previously reported this revenge porn up the chain of command to Mr. Joel Velasco, Mr. Christian Jimenez, and Dylan (Last Name Presently Unknown), and that while they were all fully aware of what was going on, absolutely nothing had been done to rectify the situation and the revenge porn was still being disseminated. Ms. Leyva explained, despite repeated representations to her that they would "take care of it", no corrective action had been taken and Mr. Eguiza was still showing off nude media of her to anyone within earshot. Finally, Ms. Leyva explained to Plaintiff, that she had been dealing with the failures to address her complaints for around 2 weeks before she worked up the courage to ask Plaintiff to assist her in reporting the incident. Plaintiff was heartbroken on Ms. Leyva's behalf, and disgusted that this behavior not only occurred in the first place, but that management had been previously made aware and had failed to act on it. Plaintiff ended the interaction telling Ms. Leyva that he would formally report the harassment immediately.

12.    Immediately after the conversation with Ms. Leyva, Plaintiff thereafter approached Tabitha (Last Name Presently Unknown), the individual in charge of the facility above Plaintiff in the chain of command, to report the sexual harassment he had just learned of. Specifically, Plaintiff explained to Tabitha that Mr. Eguiza was consistently displaying revenge porn of Ms. Leyva to his subordinates and that she expressed to him that she felt harassed and humiliated every day that she

came into work. Plaintiff further complained that this has been an ongoing issue that was previously reported to management and that no action had been taken whatsoever to remedy the situation. Tabitha concluded this conversation by telling Plaintiff that she would report Plaintiff's whistleblower complaint up the chain of command to Site Supervisor, Defendant Michael Dominic.

13.     Around 2 days after Plaintiff's whistleblower complaint to Tabitha, Ms. Leyva approached Plaintiff at the facility and stated, "Thank you for helping me out, no one else would help me, I am glad you are a good person and were willing to go out of your way to do this." Ms. Leyva further informed Plaintiff that an investigation was underway and that Defendant Dominic would be contacting Plaintiff imminently to interview him as part of the investigation.

14.     A few days after the conversation as outlined in ¶ 13 above, Plaintiff again saw Ms. Leyva bawling her eyes out at work and asked her what was wrong. Ms. Leyva expressed to Plaintiff that she was incredibly frustrated and that she didn't know how much longer she could continue working for Defendants as she felt that it seemed clear that Defendants were acting to attempt to induce Ms. Leyva's resignation and sweep the issue up under the rug. Ms. Leyva expressed to Plaintiff that nothing had changed, that her harassers were still working without consequence, and that her mental state had only worsened since Plaintiff formally reported the sexual harassment on her behalf. Ms. Leyva then asked Plaintiff whether Defendant Dominic had contacted him regarding the investigation yet, to which Plaintiff responded that he had not. Ms. Leyva was in shambles, and Plaintiff felt the need to file another formal whistleblower complaint regarding the situation. Plaintiff ended the interaction stating that he was going to file a formal whistleblower complaint on her behalf in an effort to get Defendants to take the situation seriously.

15.     Accordingly, around September 19, 2023, Plaintiff sent a whistleblower email to Mr. Glenn Cooper, another managerial employee up Plaintiff's chain of command, outlining the fact that he had:  i) reported sexual harassment; ii) that he was being retaliated against in the workplace by the supervisors that he reported following his complaint; and iii) that he and other employees were being made to endure an unlawfully hostile work environment as a result of the investigation into the sexual harassment whistleblower complaint that he previously levied.

16.     In response to Plaintiff's September 19, 2023 email, Ms. Nancy Ortiz (a Human Resources Representative for Defendants), called Plaintiff to interview him about his whistleblower complaints.  During the call, Plaintiff reiterated the facts as recited above as it related to the sexual harassment that he reported, discussed that no remedial actions were taken against the individuals who were sexually harassing Ms. Leyva, and complained that he himself had been experiencing workplace retaliation ever since he formally reported the harassment.  As to the last item, Plaintiff explained to Ms. Ortiz that beyond the underlying issue of the sexual harassment occurring without any consequence to the perpetrators, that he was personally being retaliated against at work by the other supervisors who were clearly upset and felt betrayed that Plaintiff "snitched" on them.  He was no longer invited to supervisor meetings, he was removed from the daily supervisor email chains, and was essentially treated like a ghost in the facility by the other supervisors.  Mr. Eguiza and another supervisor named Ernesto (Last Name Presently Unknown) completely refused to speak to Plaintiff. Furthermore, the individuals who he directly reported to, Mr. Velasco and Mr. Cristian Jimenez, refused to engage with him and actively excluded and isolated him from the operations at the facility. These retaliatory actions made it impossible for Plaintiff to perform his job effectively.  In a work environment where he was charged with attending to the needs of up to hundreds of new migrants each day, communication was essential to Plaintiff being able to perform his duties.  Following the phone conversation with Ms. Ortiz, Plaintiff memorialized the discussion in an email to Ms. Ortiz stating that ever since he blew the whistle on the sexual harassment that the rest of the staff had been retaliating against him and that he was being subjected to an untenably hostile work environment. Plaintiff's complaints of retaliation and hostile work environment were not meaningfully engaged with whatsoever.

17.     Throughout the course of the "investigation" into the sexual harassment complaint, none of the alleged perpetrators were disciplined, suspended, and did not suffer from any consequences whatsoever.  While Plaintiff was never informed of the outcome of the investigation, he became aware that Ms. Leyva was terminated around early October 2023, presumably in an unlawful retaliatory manner.

**EXHIBIT A**

**<u>Plaintiff is Terminated as Retaliation For His Whistleblower Complaints</u>**

18.    Around October 23, 2023, mere weeks after the investigation that Plaintiff was responsible for spearheading concluded, Plaintiff was finishing up his regular workday and was directing traffic outside the facility during the shift change (3rd shift or "night shift" to 1st shift or "morning shift").  As he was directing traffic, he overheard the night shift security guard Shannon (Last Name Presently Unknown) stating to the incoming morning shift security team that they "can't let this person in without a badge" in reference to an employee attempting to enter the facility badge-less, which was explicitly against protocol in the high security federal facility. Shannon thereafter left, as her shift had ended, and Plaintiff noticed the morning shift security guards attempting to sneak the badge-less employee into the facility against company protocol and against explicit instructions from Shannon.  Plaintiff then approached the security guards who were attempting to violate Defendants' policy by allowing someone in without a badge and stopped them to remind them that nobody was allowed to enter the facility without a badge.  Plaintiff calmy explained that while it is the usual practice during the night shift to send employees home if they show up without a badge, that they could alternatively call a supervisor to escort the employee into the facility and obtain a new badge, but that it was explicitly against Defendants' policy/procedures to otherwise permit anyone inside without a badge.  The security team that was attempting to circumvent the badge policy thereafter called Defendant Dominic, who after speaking with the security team, aggressively approached Plaintiff and started hurling expletives at him.  Plaintiff calmy responded he did not know why Defendant Dominic was screaming at him and that he was just doing what he was trained to do, namely enforce one of the most stringent rules at the facility to not permit individuals to enter the high security government area without proper credentials.  Plaintiff explained that it was explicitly his job as a supervisor to make sure that the facility is secured and that everybody that enters has their badge. Defendant Dominic thereafter continued screaming at Plaintiff, stating, "THIS IS MY FUCKING SITE I DO WHATEVER I WANT", as if Plaintiff was somehow in the wrong for attempting to enforce a very important policy.  Plaintiff's shift ended shortly thereafter.

**EXHIBIT A**

19.     Around two days later, Plaintiff was informed that he was going to be suspended pending an investigation into the "the incident with security".  Mere days after his retaliatory suspension, Plaintiff was terminated.  Indeed, ironically but unsurprisingly, the flimsy pretext for terminating Plaintiff was based on him simply attempting to do the right thing and abide by Defendants' policies and procedures.  Further, curiously, the individuals who were identified as the perpetrators in the sexual harassment Plaintiff caused to be initiated were *not ever suspended or disciplined and remained in their positions* both during and following the "investigation" into Plaintiff's whistleblower complaint of sexual harassment.  Meanwhile, Plaintiff, who had no history of performance concerns, was abruptly suspended and terminated for simply doing his job and attempting to ensure adherence to Defendants' own stated policies.

20.     It is abundantly clear that Defendants utilized a false pretext for Plaintiff's termination when the real motivations underlying their respective terminations was to clean house of those involved in the very serious complaint about sexual harassment and retaliation and continue business as normal and permit sexual harassers to continue working without consequences.  Indeed, Defendants terminated anyone with a conscience that was involved in the sexual harassment investigation:  i) Defendants terminated Plaintiff, the individual who formally reported it; ii) Defendants terminated Ms. Leyva, the victim of the sexual harassment; and iii) upon information and belief, terminated Ms. Ortiz who as the HR representative was doing everything in her power to do the right thing.

21.     Upon information and belief, Defendants manufactured false allegations and initiated an unfounded investigation against Plaintiff which served as pretext to terminate him as retaliation for i) reporting sexual harassment, ii) making multiple whistleblower complaints regarding both the underlying sexual harassment and retaliation he had been made to endure as a consequence of his reports of sexual harassment.

22.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer severe mental and emotional distress.  Moreover, Plaintiff has been humiliated and

COMPLAINT

**EXHIBIT A**

embarrassed as a result of the foregoing acts of Defendants.  As a further direct and proximate result of the foregoing unlawful and malicious acts of Defendants, Plaintiff has suffered monetary damages.

**B. WAGE & HOUR VIOLATIONS**

23.     Plaintiff worked countless hours of overtime during his employment with Defendants that went wholly uncompensated.  Specifically, Defendants thought that they could somehow circumvent weekly overtime requirements by rolling over hours to the next week.  For example, if Plaintiff worked Monday through Friday on a given week, then once he clocked out for his meal period on Friday, the rest of the hours he worked during the shift would not be credited towards that weeks' hours worked, but rather hours work for the following week.  To further illustrate this scheme, for example, if Plaintiff worked from 11am-4am on Friday, he would clock out at 4am to take his meal period, and clock back in at 4:30am and work until the conclusion of his shift at 7:30 a.m. However, the hours worked between 4:30am and 7:30am would not count towards that weeks' hours worked, but instead be rolled over to his hours for the next pay period.  These hours worked following his meal period on his last shift worked during a given work week would inherently be overtime hours as he always worked at least 40 hours per week, but Defendants' practices served to pay these overtime hours as regular hours for the following pay period.  Consequently, due Defendants' unlawful timekeeping and payment policies and practices that failed to properly compensate for all hours worked, including overtime hours worked, Plaintiff has been deprived of all required overtime wages earned.

24.     Furthermore, Plaintiff was not authorized to exercise all legally required rest periods. Rather, Plaintiff would generally be on-the-clock and working throughout the entirety of his shift due to the intense work demands placed upon him by Defendants.  Indeed, Plaintiff cannot ever recall ever receiving a rest period, the only breaks he ever had during his shifts were the few meal periods that he was provided.  Additionally, even if Defendants ever authorized or provided Plaintiff with anything resembling a rest period, they were inherently on-duty and non-compliant as Plaintiff was not permitted to leave Defendants' facilities and would be badgered with work-related questions and concerns throughout the entirety of his shifts.  As a consequence, Plaintiff was systematically denied

paid rest period compensation that he was duly and legally entitled to. Despite Defendants' failure to authorize and permit Plaintiff to take all lawful paid rest periods, due to their uniform and unlawful practices, Defendants never provided Plaintiff with an hour of pay at his regular rate for each rest period violation as required by Labor Code § 226.7. Upon information and belief, during at least a portion of the time period in question, Defendants maintained no payroll code or another mechanism for the payment of rest period premiums in the event Plaintiff was not authorized to take lawful rest periods.

25. Defendants also failed to provide Plaintiff with a compliant first meal period when he worked shifts in excess of 6.0 hours. Plaintiff rarely, if ever, was entitled to exercise the use of a timely, duty-free, legally compliant thirty-minute uninterrupted meal period despite always working at least 6.0 hours in a day. Rather, despite countless complaints regarding Defendants' failures to provide all requisite meal periods, Plaintiff would generally work through his shifts without taking any time for a compliant meal period. Furthermore, to the extent that Plaintiff was ever afforded anything resembling a meal period, they were always on-duty and non-compliant as he was not permitted to leave the facility at any time during his shifts. Defendants were not only aware of, but actively encouraged this practice. Despite Defendants' failure to provide Plaintiff with all lawful meal periods due to their uniform and unlawful practices, Defendants didn't always provide Plaintiff with an hour of pay at his regular rate for each meal period violation as required by Labor Code § 226.7. While Plaintiff occasionally received meal period premium payments, they were vastly under representative of the actual number of times that he experienced meal period violations.

26. Defendants failed to adequately reimburse Plaintiff for all reasonable and necessary work expenditures, including but not limited to, requiring him to utilize his personal cellular phone for work purposes without reimbursement. Nearly all communications between Plaintiff with his colleagues regarding work-related tasks were necessarily conducted on his personal cell phone. Plaintiff was even made to complete required work-related courses on a training application on his personal cellular phone. Furthermore, Plaintiff was required to purchase "army style boots" as a necessary condition of his employment and was not ever reimbursed for the expenses attendant with

EXHIBIT A

their purchase  As a consequence, Defendants failed to reimburse Plaintiff for all necessarily incurred business expenditures in violation of Labor Code § 2802.

27.     As a result of Defendants' failure to pay all overtime wages and failure to provide all required meal periods and authorize all rest periods or pay premium pay in lieu thereof, Defendants have maintained inaccurate payroll records, failed to timely pay all wages owed to employees, and issued inaccurate wage statements.

## FIRST CAUSE OF ACTION

### VIOLATION OF LABOR CODE SECTION 1102.5

### (Lab. Code § 1102.5)

### (Against All Defendants Except Defendant Michael Dominic)

28.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

29.     In doing the things alleged herein, Defendants, violated Labor Code Section 1102.5 which provides, in pertinent part:

"(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee, or another employee who has the authority to investigate, discovery, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry.  If the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is party of the employee's job duties.

…

(f)  In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section."

30.     In the instant case, Plaintiff blew the whistle on unlawful sexual harassment, unlawful retaliation, and an unlawfully hostile work environment, amongst other legitimate bona-fide complaints of what he reasonably believed to be unlawful activities.

31.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered

EXHIBIT A

damages, including but not limited to, lost past and future wages and benefits and mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this Court.

32. In doing the things herein alleged, Defendants were guilty of oppression, fraud and malice in that they, among other things, acted with a willful and conscious disregard for Plaintiff's rights insofar as the things alleged were attributable to employees of Defendants, these employees were employed by Defendants with advance knowledge of the unfitness of the employees and/or they were employed with a conscious disregard for the rights of others and/or Defendants authorized or ratified the wrongful conduct and/or there was advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malice on the part of an officer, director or managing agent of Defendants all entitling Plaintiff to the recovery of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### RETALIATION

**(Cal. Gov't Code § 12940(h))**

**(Against All Defendants Except Defendant Michael Dominic)**

33. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

34. At all times mentioned herein, the California Fair Employment and Housing Act (FEHA) (Cal. Gov't Code § 12900, *et seq.*) was in full force and effect and fully binding upon Defendants. Specifically, section 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under this part.

35. Plaintiff formally reported unlawful sexual harassment and was an active and willing witness to the investigation of the complaints of unlawful sexual harassment that he reported.

36. As a direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered substantial emotional distress, humiliation, shame and embarrassment, all to the

EXHIBIT A

Plaintiff's damage and in an amount to be proven at trial.

37. Defendants committed the acts herein despicably, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

38. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

39. The conduct of Defendants' management employees as set forth above was so extreme and outrageous that it exceeded the boundaries of human decency and was beyond pale of conduct tolerated in a civilized society. This conduct was intended to cause severe emotional distress, or was done in reckless disregard of the probability of causing severe emotional distress.

40. As an actual and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer severe and continuous humiliation, emotional distress and physical and mental pain and anguish, all to his damage in an amount according to proof at trial.

41. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

///

///

///

## FOURTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against All Defendants Except Defendant Michael Dominic)

42.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

43.     Defendants terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various state statutes and Constitutional provisions including but not limited to FEHA and Article I, section 8 of the California Constitution, and the California Labor Code.

44.     As a proximate result of the conduct of Defendants, Plaintiff suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

45.     In committing the foregoing acts, Defendants have been guilty of oppression, fraud and/or malice under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendants.

46.     The acts of oppression, fraud and/or malice were engaged in by employees of Defendants.  Defendants had advance knowledge of the unfitness of each employee who acted with oppression, fraud and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppressions, fraud and/or malice.  The advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud and/or malice was committed by or on part of an officer, director or managing agent of Defendants, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in accordance with California Civil Code section 3294 in a sum appropriate to punish and make an example of Defendants.

47.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of

this Court.

**FIFTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**(Cal. Bus. & Prof. Code § 17200-17208)**

**(Against All Defendants Except Defendant Michael Dominic)**

48.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

49.     The foregoing conduct as alleged in this complaint violates the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq*.). Section 17200 prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

50.     Throughout the course of Plaintiff's employment, Defendants committed acts of unfair competition, as defined by the UCL, by among other things, engaging in the acts and practices described in this complaint, including but not limited to retaliating against him for making whistleblower complaints.  Defendants' conduct as alleged herein has damaged Plaintiff by wrongfully denying him earned wages and equity, and therefore was substantially injurious to the Plaintiff.

51.     Defendants' course of conduct, acts and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

52.     Plaintiff seeks disgorgement in the amount of the respective unpaid wages and equity and such other legal and equitable relief from Defendants unlawful and willful conduct as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**

**FAILURE TO PAY ALL OVERTIME WAGES**

**(Against All Defendants Except Defendant Michael Dominic)**

53.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

14
COMPLAINT

**EXHIBIT A**

54.     This cause of action is brought pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198, which provide that non-exempt employees are entitled to overtime wages for all overtime hours worked, and provide a private right of action for the failure to pay all overtime compensation for overtime work performed.

55.     At all times relevant herein, Defendants were required to properly compensate Plaintiff for all overtime hours worked pursuant to California Labor Code § 1194 and the IWC Wage Orders. The IWC Wage Orders require an employer to pay overtime wages when an employee's hours worked cross certain thresholds or meet certain criteria set forth in the Wage Order.

56.     At all times relevant herein, Defendants caused Plaintiff to work overtime hours but did not compensate Plaintiff at one and one-half times his regular rate of pay for such hours.

57.     The foregoing policies and practices are unlawful and create entitlement to recovery by Plaintiff in a civil action for the unpaid amount of overtime premiums owing, including interest thereon, statutory and civil penalties, and attorneys' fees and costs of suit according to California Labor Code §§ 204, 510, 558, 1194, and 1198, the IWC Wage Orders, and Code of Civil Procedure § 1021.5.

## SEVENTH CAUSE OF ACTION

### MEAL PERIOD VIOLATIONS

**(Against All Defendants Except Defendant Michael Dominic)**

58.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

59.     Plaintiff is informed and believes, and based thereon alleges, that Defendants failed in their affirmative obligation to provide all of their non-exempt employees in California, including Plaintiff, with all legally compliant meal periods in accordance with the mandates of the California Labor Code and the IWC Wage Orders. Despite Defendants' violations, Defendants did not pay an additional hour of pay to Plaintiff at his respective regular rate of compensation, in accordance with California Labor Code §§ 226.7, and 512 on each occasion that he experienced a meal period violation.

60.     As a result, Defendants are responsible for paying premium compensation for meal

period violations including interest thereon, as well as statutory penalties, civil penalties, and costs of suit, pursuant to Labor Code §§ 226.7, 512, and 558, the IWC Wage Orders, and Civil Code §§ 3287(b) and 3289.

## EIGHTH CAUSE OF ACTION

### REST PERIOD VIOLATIONS

#### (Against All Defendants Except Defendant Michael Dominic)

61.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

62.     The IWC Wage Orders and California Labor Code §§ 226.2, 226.7 and 516 establish the right of employees to be authorized and permitted to take a paid rest period of at least ten (10) minutes net rest time for each four (4) hour period worked, or major fraction thereof.

63.     As alleged herein, Defendants failed to authorize and permit Plaintiff to take all legally compliant rest periods.

64.     The foregoing violations create an entitlement to recovery by Plaintiff in a civil action for the unpaid rest period wages and the amount of rest period premiums owing, including interest thereon, as well as statutory penalties, civil penalties, and costs of suit according to California Labor Code §§226.2, 226.7, 516, 558, and Civil Code §§ 3287(b) and 3289.

## NINETH CAUSE OF ACTION

### WAGE STATEMENT VIOLATIONS

#### (Against All Defendants Except Defendant Michael Dominic)

65.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

66.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knowingly and intentionally, as a matter of uniform practice and policy, failed to furnish Plaintiff with accurate, itemized wage statements that included, among other requirements, accurate total gross wages earned, meal and rest period premiums, and total net wages earned in violation of Labor Code §226 *et seq*.

67.     Defendants' failure to furnish Plaintiff with complete and accurate, itemized wage statements resulted in actual injury, as said failures led to, among other things, the non-payment of

all of his overtime wages, meal and rest period premiums, and deprived him of the information

necessary to identify discrepancies in Defendants' reported data.

68.     Defendants' failures created an entitlement to Plaintiff in a civil action for damages

and/or penalties pursuant to Labor Code § 226, including statutory penalties civil penalties,

reasonable attorneys' fees, and costs according to suit pursuant to Labor Code § 226 *et seq.*

## TENTH CAUSE OF ACTION

### WAITING TIME PENALTIES

**(Against All Defendants Except Defendant Michael Dominic)**

69.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

70.     This cause of action is brought pursuant to Labor Code §§ 201-203, which require an

employer to pay all wages immediately at the time of termination of employment in the event the

employer discharges the employee or the employee provides at least 72 hours of notice of his/her

intent to quit.  In the event the employee provides less than 72 hours of notice of his/her intent to

quit, said employee's wages become due and payable not later than 72 hours upon said employee's

last date of employment.

71.     Defendants failed to timely pay Plaintiff all final wages due to them at the time of his

separation including, among other things, unpaid amounts for underpaid overtime wages owed, and

meal and rest period premium wages. Defendants' failure to pay all final wages was willful within

the meaning of Labor Code § 203.

72.     Defendants' willful failure to timely pay Plaintiff his earned wages upon separation

from employment results in a continued payment of wages up to thirty (30) days from the time the

wages were due.  Therefore, Plaintiff is entitled to compensation pursuant to Labor Code § 203, plus

reasonable attorneys' fees and costs of suit.

## ELEVENTH CAUSE OF ACTION

### FAILURE TO REIMBURSE BUSINESS EXPENSES

**(Against All Defendants Except Defendant Michael Dominic)**

73.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

74.     At all relevant times herein, Defendants were subject to Labor Code § 2802, which states that "an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"

75.     Due to Defendants' unlawful policy and practice of requiring employees to use their cellular phones in the performance of their job duties and purchase army style work boots, Defendants have violated Labor Code § 2802.

76.     Plaintiff is entitled to attorneys' fees and costs of suit pursuant to Labor Code § 2802(c) for bringing this action.

77.     Pursuant to Labor Code §2802(b), any action brought for the reimbursement of necessary expenditures carries interest at the same rate as judgments in civil actions. Thus, Plaintiff is entitled to interest, which shall accrue from the date on which he incurred the initial necessary expenditure.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof;

B.     For general and special damages to compensate Plaintiff for any medical expenses and suffering;

C.     For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;

D.     For restitution and/or disgorgement;

E.     For an award of costs of suit and reasonable attorneys' fees;

F.     For an award of pre-judgment and post-judgment interest;

G.     For any and all statutory penalties associated with the violations of any of the Causes of Action plead in this Complaint;

EXHIBIT A

1    H.    Upon the Sixth Cause of Action, for compensatory, consequential, general, and

2          special damages according to proof pursuant to Labor Code §§ 204, 510, 558, 1194,

3          and 1198;

4    I.    Upon the Seventh Cause of Action, for compensatory, consequential, general and

5          special damages according to proof pursuant to Labor Code §§ 226.7, 512, and 558;

6    J.    Upon the Eighth Cause of Action, for compensatory, consequential, general and

7          special damages according to proof pursuant to Labor Code §§ 226.7, 516, and 558;

8    K.    Upon the Nineth Cause of Action, for actual damages, statutory and civil penalties

9          pursuant to Labor Code § 226, *et seq.*;

10   L.    Upon the Tenth Cause of Action, for statutory penalties pursuant to Labor Code §

11         201-203;

12   M.    Upon the Eleventh Cause of Action, for compensatory, consequential, general and

13         special damages according to proof pursuant to Labor Code § 2802; and

14   N.    For such other and further relief as the Court deems just and proper.

15                              **DEMAND FOR JURY TRIAL**

16        Plaintiff hereby demands a jury trial on all issues so triable.

17

18   DATED:  May 8, 2024                    STANSBURY BROWN LAW, PC

19

20                                          _____

21                                          DANIEL J. BROWN
                                            ETHAN C. SURLS
22                                          Attorneys for Plaintiff
                                            CORNELL NEALEY

23

24

25

26

27

28

**EXHIBIT A**

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

Ethan Surls

,

RE:   **Notice to Complainant's Attorney**
CRD Matter Number: 202405-24639508
Right to Sue: Nealey / Deployed Services, LLC et al.

Dear Ethan Surls:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

**EXHIBIT A**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

RE:  **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202405-24639508
Right to Sue: Nealey / Deployed Services, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

Cornell Nealey

,

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202405-24639508
Right to Sue: Nealey / Deployed Services, LLC et al.

Dear Cornell Nealey:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective May 8, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**EXHIBIT A**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Cornell Nealey                                              CRD No. 202405-24639508

                              Complainant,

vs.

Deployed Services, LLC
,

Michael Dominic
,

                              Respondents

---

**1.** Respondent **Deployed Services, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Michael Dominic** individual as Co-Respondent(s).

**3.** Complainant **Cornell Nealey**, resides in the City of **,** State of **.**

**4.** Complainant alleges that on or about **October 30, 2023**, respondent took the following adverse actions:

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was terminated, suspended.

**Additional Complaint Details:** Claimant reported that a supervisory employee was sexually harassing a subordinate employee and was subsequently suspended and terminated as retaliation for doing so.

-1-
*Complaint – CRD No. 202405-24639508*

Date Filed: May 8, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT A**

1  VERIFICATION

2  I, **Ethan C. Surls**, am the **Attorney** in the above-entitled complaint.  I have read the
3  foregoing complaint and know the contents thereof.  The matters alleged are based
   on information and belief, which I believe to be true.

4
   On May 8, 2024, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                                    **Redondo Beach, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                                    -2-
27
   Date Filed: May 8, 2024
28

                                               CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT A**

# EXHIBIT B

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Daniel J. Brown (Bar No. 307604);Ethan C. Surls (Bar No. 327605)
Stansbury Brown Law, PC, 2610 1/2 Abbot Kinney Blvd., Venice, CA 90291
dbrown@stansburybrownlaw.com;esurls@stansburybrownlaw.com

TELEPHONE NO.: (323) 204-3124　　FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff Cornell Nealey

SUPERIOR COURT OF CALIFORNIA, COUNTY OF　SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

CASE NAME:
NEALEY v. DEPLOYED SERVICES, LLC, et al.

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/10/2024** at 11:35:45 AM

Clerk of the Superior Court
By Danielle Cortez,Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|

CIVIL CASE COVER SHEET

☑ **Unlimited**
(Amount demanded exceeds $25,000)

☐ **Limited**
(Amount demanded is $25,000 or less)

**Complex Case Designation**

☐ **Counter**　☐ **Joinder**

Filed with first appearance by defendant
(Cal. Rules of Court, rule 3.402)

CASE NUMBER:
37-2024-00021759-CU-WT-CTL

JUDGE: Judge Carolyn Caietti

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary　b. ☐ nonmonetary; declaratory or injunctive relief　c. ☑ punitive
4. Number of causes of action *(specify):* (11) Eleven
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 9,2024

Ethan C. Surls
(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT B

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

EXHIBIT B

1    STANSBURY BROWN LAW, PC
     Daniel J. Brown (Bar No. 307604)
2    Ethan C. Surls (Bar No. 327605)
     2610 ½ Abbot Kinney Blvd.
3    Venice, CA 90291
     Telephone:  (323) 204-3124
4    dbrown@stansburybrownlaw.com
     esurls@stansburybrownlaw.com
5
     Attorneys for Plaintiff
6    CORNELL NEALEY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/10/2024** at 11:35:45 AM
Clerk of the Superior Court
By Danielle Cortez,Deputy Clerk

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF SAN DIEGO

9

| | |
|---|---|
| 10   CORNELL NEALEY, an individual, | Case No.   37-2024-00021759-CU-WT-CTL |
| 11              *Plaintiff*, | **COMPLAINT** |
| 12         vs. | (1)   Violation of Labor Code Section 1102.5. |
| | (2)   Retaliation (Cal. Gov't Code § 12940(h)); |
| 13   DEPLOYED SERVICES, LLC, a Nevada | (3)   Intentional Infliction of Emotional |
| limited liability company; MICHAEL | Distress; |
| 14   DOMINIC, an individual; and DOES 1 | (4)   Wrongful Termination in Violation of |
| through 50, inclusive, | Public Policy; |
| 15 | (5)   Unfair Business Practices (Cal. Bus. & |
| | Prof. Code § 17200); |
| 16              *Defendants*. | (6)   Failure to Pay All Overtime Wages |
| | (Labor Code §§ 204, 510, 551, 552, 558, |
| 17 | 1194, and 1198); |
| | (7)   Meal Period Violations (Labor Code §§ |
| 18 | 226.7, 512); |
| | (8)   Rest Period Violations (Labor Code §§ |
| 19 | 226.2, 226.7, and 516); |
| | (9)   Failure to Provide Accurate Itemized |
| 20 | Wage Statements (Labor Code § 226 *et* |
| | *seq*); |
| 21 | (10)  Waiting Time Penalties (Labor Code §§ |
| | 201-203) |
| 22 | (11)  Failure to Reimburse for Necessary |
| | Business Expenses (Labor Code § 2802) |
| 23 | |
| | **JURY TRIAL DEMANDED** |
| 24 | |

25

26

27

28

COMPLAINT

**EXHIBIT B**

COMES NOW, Plaintiff CORNELL NEALEY ("Plaintiff"), an individual, hereby brings this Complaint ("Complaint") against Deployed Services, LLC, a Nevada limited liability company; Michael Dominic, an individual; and DOES 1 through 50, inclusive, (collectively "Defendants"), and on information and belief alleges as follows:

## PARTIES

1. Plaintiff CORNELL NEALEY at all relevant times mentioned herein was an individual residing in the State of California performing work for the benefit of Defendant DEPLOYED SERVICES, LLC as a California employee in the State of California.

2. Plaintiff is informed and believes, and thereupon alleges that Defendant DEPLOYED SERVICES, LLC, is, and at all relevant times mentioned herein was, a Nevada limited liability company doing business in the State of California.

3. Plaintiff is informed and believes, and thereupon alleges that Defendant MICHAEL DOMINIC, is, and at all relevant times mentioned herein was, an individual employee of Defendant DEPLOYED SERVICES, LLC, residing in the State of California.

4. Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct alleged herein of the defendants sued as DOES 1 through 50, inclusive, but is informed and believes that these defendants are legally responsible for the conduct alleged in this complaint and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

5. Plaintiff is informed and believes that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent in this complaint, and that the acts of each defendant are legally attributable to each of the other defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction to hear this case because Plaintiff is informed and believes that the monetary damages and restitution sought in this complaint for Defendants' conduct exceeds the minimal jurisdictional limits of the Superior Court.

1
COMPLAINT

**EXHIBIT B**

7.      Venue is proper in this judicial district, pursuant to California Code of Civil Procedure section 395(a) and 395.5 in that liability arose in San Diego County because at least some of the transactions that are the subject matter of this complaint occurred therein and/or each defendant is found, maintains offices, transacts business and/or has an agent therein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Prior to the initiation of this lawsuit, Plaintiff filed a complaint against each named defendant with the California Department of Fair Employment and Housing (DFEH) pursuant to California Government Code section 12900, *et seq.*, alleging the claims described in this complaint. On May 8, 2024 the DFEH issued a "right to sue" letter.  A true and correct copy of the administrative complaint and the "right to sue" letter is attached as Exhibit A.  All conditions precedent to the institution of this lawsuit have been fulfilled.  This action is filed within one year of the date that the DFEH issued its right to sue letter.

## FACTUAL ALLEGATIONS

### A.  WHISTLEBLOWER RETALIATION/ WRONGFUL TERMINATION

9.      Plaintiff commenced work with Defendants around February 9, 2023 in the position of Field Supervisor (Porter II).  Plaintiff's job duties generally revolved around ensuring that Border Patrol officers and detained migrants were taken care of.  He essentially acted as a conduit between the officers, the migrants, and the various departments at the San Diego Border Patrol Detention Facility at 7461 Pogo Row ensuring that everybody's needs were met (i.e. food, cleaning, medicine, etc), in addition to duties of generally overseeing the facility and ensuring all rules/protocols were adhered to.

10.      Plaintiff generally worked without issue between February-September 2023.  He excelled in his position.  He got along with his coworkers, was an effective supervisor, and was integral to Defendants' operations.

///
///
///

**Plaintiff Makes a Whistleblower Complaint Regarding Another Supervisor Sexually Harassing a Subordinate Employee**

11.     Around the week of September 4, 2024, a housekeeping employee named Marlene Leyva approached Plaintiff at the facility distraught and in tears.  Plaintiff asked what was wrong, to which Ms. Leyva stated, "I know you're a supervisor, could you help me?  I have been going through this situation and it feels like sexual harassment."  Plaintiff immediately obliged, stating that of course he would help and asked Ms. Leyva to further explain the details of her situation.  Ms. Leyva then described that another supervisor, Edgar "Jacob" Eguiza, had been going around the facility and displaying nude photos and videos of her to other male employees without her consent.  Essentially, Ms. Leyva was describing that she was the victim of "revenge porn" in the workplace and that it was causing her intense distress.  Ms. Leyva then expressed to Plaintiff that she had previously reported this revenge porn up the chain of command to Mr. Joel Velasco, Mr. Christian Jimenez, and Dylan (Last Name Presently Unknown), and that while they were all fully aware of what was going on, absolutely nothing had been done to rectify the situation and the revenge porn was still being disseminated.  Ms. Leyva explained, despite repeated representations to her that they would "take care of it", no corrective action had been taken and Mr. Eguiza was still showing off nude media of her to anyone within earshot.   Finally, Ms. Leyva explained to Plaintiff, that she had been dealing with the failures to address her complaints for around 2 weeks before she worked up the courage to ask Plaintiff to assist her in reporting the incident.  Plaintiff was heartbroken on Ms. Leyva's behalf, and disgusted that this behavior not only occurred in the first place, but that management had been previously made aware and had failed to act on it.  Plaintiff ended the interaction telling Ms. Leyva that he would formally report the harassment immediately.

12.     Immediately after the conversation with Ms. Leyva, Plaintiff thereafter approached Tabitha (Last Name Presently Unknown), the individual in charge of the facility above Plaintiff in the chain of command, to report the sexual harassment he had just learned of.  Specifically, Plaintiff explained to Tabitha that Mr. Eguiza was consistently displaying revenge porn of Ms. Leyva to his subordinates and that she expressed to him that she felt harassed and humiliated every day that she

came into work.  Plaintiff further complained that this has been an ongoing issue that was previously reported to management and that no action had been taken whatsoever to remedy the situation. Tabitha concluded this conversation by telling Plaintiff that she would report Plaintiff's whistleblower complaint up the chain of command to Site Supervisor, Defendant Michael Dominic.

13.    Around 2 days after Plaintiff's whistleblower complaint to Tabitha, Ms. Leyva approached Plaintiff at the facility and stated, "Thank you for helping me out, no one else would help me, I am glad you are a good person and were willing to go out of your way to do this."  Ms. Leyva further informed Plaintiff that an investigation was underway and that Defendant Dominic would be contacting Plaintiff imminently to interview him as part of the investigation.

14.    A few days after the conversation as outlined in ¶ 13 above, Plaintiff again saw Ms. Leyva bawling her eyes out at work and asked her what was wrong.  Ms. Leyva expressed to Plaintiff that she was incredibly frustrated and that she didn't know how much longer she could continue working for Defendants as she felt that it seemed clear that Defendants were acting to attempt to induce Ms. Leyva's resignation and sweep the issue up under the rug.  Ms. Leyva expressed to Plaintiff that nothing had changed, that her harassers were still working without consequence, and that her mental state had only worsened since Plaintiff formally reported the sexual harassment on her behalf.  Ms. Leyva then asked Plaintiff whether Defendant Dominic had contacted him regarding the investigation yet, to which Plaintiff responded that he had not.  Ms. Leyva was in shambles, and Plaintiff felt the need to file another formal whistleblower complaint regarding the situation.  Plaintiff ended the interaction stating that he was going to file a formal whistleblower complaint on her behalf in an effort to get Defendants to take the situation seriously.

15.    Accordingly, around September 19, 2023, Plaintiff sent a whistleblower email to Mr. Glenn Cooper, another managerial employee up Plaintiff's chain of command, outlining the fact that he had:  i) reported sexual harassment; ii) that he was being retaliated against in the workplace by the supervisors that he reported following his complaint; and iii) that he and other employees were being made to endure an unlawfully hostile work environment as a result of the investigation into the sexual harassment whistleblower complaint that he previously levied.

4
COMPLAINT

16.     In response to Plaintiff's September 19, 2023 email, Ms. Nancy Ortiz (a Human Resources Representative for Defendants), called Plaintiff to interview him about his whistleblower complaints.  During the call, Plaintiff reiterated the facts as recited above as it related to the sexual harassment that he reported, discussed that no remedial actions were taken against the individuals who were sexually harassing Ms. Leyva, and complained that he himself had been experiencing workplace retaliation ever since he formally reported the harassment.  As to the last item, Plaintiff explained to Ms. Ortiz that beyond the underlying issue of the sexual harassment occurring without any consequence to the perpetrators, that he was personally being retaliated against at work by the other supervisors who were clearly upset and felt betrayed that Plaintiff "snitched" on them.  He was no longer invited to supervisor meetings, he was removed from the daily supervisor email chains, and was essentially treated like a ghost in the facility by the other supervisors.  Mr. Eguiza and another supervisor named Ernesto (Last Name Presently Unknown) completely refused to speak to Plaintiff. Furthermore, the individuals who he directly reported to, Mr. Velasco and Mr. Cristian Jimenez, refused to engage with him and actively excluded and isolated him from the operations at the facility. These retaliatory actions made it impossible for Plaintiff to perform his job effectively.  In a work environment where he was charged with attending to the needs of up to hundreds of new migrants each day, communication was essential to Plaintiff being able to perform his duties.  Following the phone conversation with Ms. Ortiz, Plaintiff memorialized the discussion in an email to Ms. Ortiz stating that ever since he blew the whistle on the sexual harassment that the rest of the staff had been retaliating against him and that he was being subjected to an untenably hostile work environment. Plaintiff's complaints of retaliation and hostile work environment were not meaningfully engaged with whatsoever.

17.     Throughout the course of the "investigation" into the sexual harassment complaint, none of the alleged perpetrators were disciplined, suspended, and did not suffer from any consequences whatsoever.  While Plaintiff was never informed of the outcome of the investigation, he became aware that Ms. Leyva was terminated around early October 2023, presumably in an unlawful retaliatory manner.

**Plaintiff is Terminated as Retaliation For His Whistleblower Complaints**

18. Around October 23, 2023, mere weeks after the investigation that Plaintiff was responsible for spearheading concluded, Plaintiff was finishing up his regular workday and was directing traffic outside the facility during the shift change (3rd shift or "night shift" to 1st shift or "morning shift"). As he was directing traffic, he overheard the night shift security guard Shannon (Last Name Presently Unknown) stating to the incoming morning shift security team that they "can't let this person in without a badge" in reference to an employee attempting to enter the facility badge-less, which was explicitly against protocol in the high security federal facility. Shannon thereafter left, as her shift had ended, and Plaintiff noticed the morning shift security guards attempting to sneak the badge-less employee into the facility against company protocol and against explicit instructions from Shannon. Plaintiff then approached the security guards who were attempting to violate Defendants' policy by allowing someone in without a badge and stopped them to remind them that nobody was allowed to enter the facility without a badge. Plaintiff calmy explained that while it is the usual practice during the night shift to send employees home if they show up without a badge, that they could alternatively call a supervisor to escort the employee into the facility and obtain a new badge, but that it was explicitly against Defendants' policy/procedures to otherwise permit anyone inside without a badge. The security team that was attempting to circumvent the badge policy thereafter called Defendant Dominic, who after speaking with the security team, aggressively approached Plaintiff and started hurling expletives at him. Plaintiff calmy responded he did not know why Defendant Dominic was screaming at him and that he was just doing what he was trained to do, namely enforce one of the most stringent rules at the facility to not permit individuals to enter the high security government area without proper credentials. Plaintiff explained that it was explicitly his job as a supervisor to make sure that the facility is secured and that everybody that enters has their badge. Defendant Dominic thereafter continued screaming at Plaintiff, stating, "THIS IS MY FUCKING SITE I DO WHATEVER I WANT", as if Plaintiff was somehow in the wrong for attempting to enforce a very important policy. Plaintiff's shift ended shortly thereafter.

19.     Around two days later, Plaintiff was informed that he was going to be suspended pending an investigation into the "the incident with security".  Mere days after his retaliatory suspension, Plaintiff was terminated.  Indeed, ironically but unsurprisingly, the flimsy pretext for terminating Plaintiff was based on him simply attempting to do the right thing and abide by Defendants' policies and procedures.  Further, curiously, the individuals who were identified as the perpetrators in the sexual harassment Plaintiff caused to be initiated were *not ever suspended or disciplined and remained in their positions* both during and following the "investigation" into Plaintiff's whistleblower complaint of sexual harassment.  Meanwhile, Plaintiff, who had no history of performance concerns, was abruptly suspended and terminated for simply doing his job and attempting to ensure adherence to Defendants' own stated policies.

20.     It is abundantly clear that Defendants utilized a false pretext for Plaintiff's termination when the real motivations underlying their respective terminations was to clean house of those involved in the very serious complaint about sexual harassment and retaliation and continue business as normal and permit sexual harassers to continue working without consequences.  Indeed, Defendants terminated anyone with a conscience that was involved in the sexual harassment investigation:  i) Defendants terminated Plaintiff, the individual who formally reported it; ii) Defendants terminated Ms. Leyva, the victim of the sexual harassment; and iii) upon information and belief, terminated Ms. Ortiz who as the HR representative was doing everything in her power to do the right thing.

21.     Upon information and belief, Defendants manufactured false allegations and initiated an unfounded investigation against Plaintiff which served as pretext to terminate him as retaliation for i) reporting sexual harassment, ii) making multiple whistleblower complaints regarding both the underlying sexual harassment and retaliation he had been made to endure as a consequence of his reports of sexual harassment.

22.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer severe mental and emotional distress.  Moreover, Plaintiff has been humiliated and

embarrassed as a result of the foregoing acts of Defendants.  As a further direct and proximate result of the foregoing unlawful and malicious acts of Defendants, Plaintiff has suffered monetary damages.

**B. WAGE & HOUR VIOLATIONS**

23.     Plaintiff worked countless hours of overtime during his employment with Defendants that went wholly uncompensated.  Specifically, Defendants thought that they could somehow circumvent weekly overtime requirements by rolling over hours to the next week.  For example, if Plaintiff worked Monday through Friday on a given week, then once he clocked out for his meal period on Friday, the rest of the hours he worked during the shift would not be credited towards that weeks' hours worked, but rather hours work for the following week.  To further illustrate this scheme, for example, if Plaintiff worked from 11am-4am on Friday, he would clock out at 4am to take his meal period, and clock back in at 4:30am and work until the conclusion of his shift at 7:30 a.m. However, the hours worked between 4:30am and 7:30am would not count towards that weeks' hours worked, but instead be rolled over to his hours for the next pay period.  These hours worked following his meal period on his last shift worked during a given work week would inherently be overtime hours as he always worked at least 40 hours per week, but Defendants' practices served to pay these overtime hours as regular hours for the following pay period.  Consequently, due Defendants' unlawful timekeeping and payment policies and practices that failed to properly compensate for all hours worked, including overtime hours worked, Plaintiff has been deprived of all required overtime wages earned.

24.     Furthermore, Plaintiff was not authorized to exercise all legally required rest periods. Rather, Plaintiff would generally be on-the-clock and working throughout the entirety of his shift due to the intense work demands placed upon him by Defendants.  Indeed, Plaintiff cannot ever recall ever receiving a rest period, the only breaks he ever had during his shifts were the few meal periods that he was provided.  Additionally, even if Defendants ever authorized or provided Plaintiff with anything resembling a rest period, they were inherently on-duty and non-compliant as Plaintiff was not permitted to leave Defendants' facilities and would be badgered with work-related questions and concerns throughout the entirety of his shifts.  As a consequence, Plaintiff was systematically denied

paid rest period compensation that he was duly and legally entitled to. Despite Defendants' failure to authorize and permit Plaintiff to take all lawful paid rest periods, due to their uniform and unlawful practices, Defendants never provided Plaintiff with an hour of pay at his regular rate for each rest period violation as required by Labor Code § 226.7. Upon information and belief, during at least a portion of the time period in question, Defendants maintained no payroll code or another mechanism for the payment of rest period premiums in the event Plaintiff was not authorized to take lawful rest periods.

25.     Defendants also failed to provide Plaintiff with a compliant first meal period when he worked shifts in excess of 6.0 hours. Plaintiff rarely, if ever, was entitled to exercise the use of a timely, duty-free, legally compliant thirty-minute uninterrupted meal period despite always working at least 6.0 hours in a day. Rather, despite countless complaints regarding Defendants' failures to provide all requisite meal periods, Plaintiff would generally work through his shifts without taking any time for a compliant meal period. Furthermore, to the extent that Plaintiff was ever afforded anything resembling a meal period, they were always on-duty and non-compliant as he was not permitted to leave the facility at any time during his shifts. Defendants were not only aware of, but actively encouraged this practice. Despite Defendants' failure to provide Plaintiff with all lawful meal periods due to their uniform and unlawful practices, Defendants didn't always provide Plaintiff with an hour of pay at his regular rate for each meal period violation as required by Labor Code § 226.7. While Plaintiff occasionally received meal period premium payments, they were vastly under representative of the actual number of times that he experienced meal period violations.

26.     Defendants failed to adequately reimburse Plaintiff for all reasonable and necessary work expenditures, including but not limited to, requiring him to utilize his personal cellular phone for work purposes without reimbursement. Nearly all communications between Plaintiff with his colleagues regarding work-related tasks were necessarily conducted on his personal cell phone. Plaintiff was even made to complete required work-related courses on a training application on his personal cellular phone. Furthermore, Plaintiff was required to purchase "army style boots" as a necessary condition of his employment and was not ever reimbursed for the expenses attendant with

their purchase  As a consequence, Defendants failed to reimburse Plaintiff for all necessarily incurred business expenditures in violation of Labor Code § 2802.

27.     As a result of Defendants' failure to pay all overtime wages and failure to provide all required meal periods and authorize all rest periods or pay premium pay in lieu thereof, Defendants have maintained inaccurate payroll records, failed to timely pay all wages owed to employees, and issued inaccurate wage statements.

## FIRST CAUSE OF ACTION

### VIOLATION OF LABOR CODE SECTION 1102.5

### (Lab. Code § 1102.5)

### (Against All Defendants Except Defendant Michael Dominic)

28.     Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

29.     In doing the things alleged herein, Defendants, violated Labor Code Section 1102.5 which provides, in pertinent part:

"(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee, or another employee who has the authority to investigate, discovery, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry.  If the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is party of the employee's job duties.

…

(f) In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section."

30.     In the instant case, Plaintiff blew the whistle on unlawful sexual harassment, unlawful retaliation, and an unlawfully hostile work environment, amongst other legitimate bona-fide complaints of what he reasonably believed to be unlawful activities.

31.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered

COMPLAINT

EXHIBIT B

damages, including but not limited to, lost past and future wages and benefits and mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this Court.

32. In doing the things herein alleged, Defendants were guilty of oppression, fraud and malice in that they, among other things, acted with a willful and conscious disregard for Plaintiff's rights insofar as the things alleged were attributable to employees of Defendants, these employees were employed by Defendants with advance knowledge of the unfitness of the employees and/or they were employed with a conscious disregard for the rights of others and/or Defendants authorized or ratified the wrongful conduct and/or there was advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malice on the part of an officer, director or managing agent of Defendants all entitling Plaintiff to the recovery of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### RETALIATION

### (Cal. Gov't Code § 12940(h))

### (Against All Defendants Except Defendant Michael Dominic)

33. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

34. At all times mentioned herein, the California Fair Employment and Housing Act (FEHA) (Cal. Gov't Code § 12900, *et seq*.) was in full force and effect and fully binding upon Defendants. Specifically, section 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under this part.

35. Plaintiff formally reported unlawful sexual harassment and was an active and willing witness to the investigation of the complaints of unlawful sexual harassment that he reported.

36. As a direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered substantial emotional distress, humiliation, shame and embarrassment, all to the

EXHIBIT B

Plaintiff's damage and in an amount to be proven at trial.

37. Defendants committed the acts herein despicably, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

### THIRD CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

38. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

39. The conduct of Defendants' management employees as set forth above was so extreme and outrageous that it exceeded the boundaries of human decency and was beyond pale of conduct tolerated in a civilized society. This conduct was intended to cause severe emotional distress, or was done in reckless disregard of the probability of causing severe emotional distress.

40. As an actual and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer severe and continuous humiliation, emotional distress and physical and mental pain and anguish, all to his damage in an amount according to proof at trial.

41. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

///

///

///

## FOURTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against All Defendants Except Defendant Michael Dominic)

42.  Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

43.  Defendants terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various state statutes and Constitutional provisions including but not limited to FEHA and Article I, section 8 of the California Constitution, and the California Labor Code.

44.  As a proximate result of the conduct of Defendants, Plaintiff suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

45.  In committing the foregoing acts, Defendants have been guilty of oppression, fraud and/or malice under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendants.

46.  The acts of oppression, fraud and/or malice were engaged in by employees of Defendants.  Defendants had advance knowledge of the unfitness of each employee who acted with oppression, fraud and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppressions, fraud and/or malice.  The advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud and/or malice was committed by or on part of an officer, director or managing agent of Defendants, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in accordance with California Civil Code section 3294 in a sum appropriate to punish and make an example of Defendants.

47.  Plaintiff has been generally damaged in an amount within the jurisdictional limits of

this Court.

**FIFTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**(Cal. Bus. & Prof. Code § 17200-17208)**

**(Against All Defendants Except Defendant Michael Dominic)**

48. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

49. The foregoing conduct as alleged in this complaint violates the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq*.). Section 17200 prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

50. Throughout the course of Plaintiff's employment, Defendants committed acts of unfair competition, as defined by the UCL, by among other things, engaging in the acts and practices described in this complaint, including but not limited to retaliating against him for making whistleblower complaints. Defendants' conduct as alleged herein has damaged Plaintiff by wrongfully denying him earned wages and equity, and therefore was substantially injurious to the Plaintiff.

51. Defendants' course of conduct, acts and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

52. Plaintiff seeks disgorgement in the amount of the respective unpaid wages and equity and such other legal and equitable relief from Defendants unlawful and willful conduct as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**

**FAILURE TO PAY ALL OVERTIME WAGES**

**(Against All Defendants Except Defendant Michael Dominic)**

53. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

---

14

COMPLAINT

54. This cause of action is brought pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198, which provide that non-exempt employees are entitled to overtime wages for all overtime hours worked, and provide a private right of action for the failure to pay all overtime compensation for overtime work performed.

55. At all times relevant herein, Defendants were required to properly compensate Plaintiff for all overtime hours worked pursuant to California Labor Code § 1194 and the IWC Wage Orders. The IWC Wage Orders require an employer to pay overtime wages when an employee's hours worked cross certain thresholds or meet certain criteria set forth in the Wage Order.

56. At all times relevant herein, Defendants caused Plaintiff to work overtime hours but did not compensate Plaintiff at one and one-half times his regular rate of pay for such hours.

57. The foregoing policies and practices are unlawful and create entitlement to recovery by Plaintiff in a civil action for the unpaid amount of overtime premiums owing, including interest thereon, statutory and civil penalties, and attorneys' fees and costs of suit according to California Labor Code §§ 204, 510, 558, 1194, and 1198, the IWC Wage Orders, and Code of Civil Procedure § 1021.5.

## SEVENTH CAUSE OF ACTION

### MEAL PERIOD VIOLATIONS

**(Against All Defendants Except Defendant Michael Dominic)**

58. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

59. Plaintiff is informed and believes, and based thereon alleges, that Defendants failed in their affirmative obligation to provide all of their non-exempt employees in California, including Plaintiff, with all legally compliant meal periods in accordance with the mandates of the California Labor Code and the IWC Wage Orders. Despite Defendants' violations, Defendants did not pay an additional hour of pay to Plaintiff at his respective regular rate of compensation, in accordance with California Labor Code §§ 226.7, and 512 on each occasion that he experienced a meal period violation.

60. As a result, Defendants are responsible for paying premium compensation for meal

EXHIBIT B

period violations including interest thereon, as well as statutory penalties, civil penalties, and costs of suit, pursuant to Labor Code §§ 226.7, 512, and 558, the IWC Wage Orders, and Civil Code §§ 3287(b) and 3289.

## EIGHTH CAUSE OF ACTION

### REST PERIOD VIOLATIONS

**(Against All Defendants Except Defendant Michael Dominic)**

61.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

62.     The IWC Wage Orders and California Labor Code §§ 226.2, 226.7 and 516 establish the right of employees to be authorized and permitted to take a paid rest period of at least ten (10) minutes net rest time for each four (4) hour period worked, or major fraction thereof.

63.     As alleged herein, Defendants failed to authorize and permit Plaintiff to take all legally compliant rest periods.

64.     The foregoing violations create an entitlement to recovery by Plaintiff in a civil action for the unpaid rest period wages and the amount of rest period premiums owing, including interest thereon, as well as statutory penalties, civil penalties, and costs of suit according to California Labor Code §§226.2, 226.7, 516, 558, and Civil Code §§ 3287(b) and 3289.

## NINETH CAUSE OF ACTION

### WAGE STATEMENT VIOLATIONS

**(Against All Defendants Except Defendant Michael Dominic)**

65.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

66.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knowingly and intentionally, as a matter of uniform practice and policy, failed to furnish Plaintiff with accurate, itemized wage statements that included, among other requirements, accurate total gross wages earned, meal and rest period premiums, and total net wages earned in violation of Labor Code §226 *et seq*.

67.     Defendants' failure to furnish Plaintiff with complete and accurate, itemized wage statements resulted in actual injury, as said failures led to, among other things, the non-payment of

all of his overtime wages, meal and rest period premiums, and deprived him of the information necessary to identify discrepancies in Defendants' reported data.

68.     Defendants' failures created an entitlement to Plaintiff in a civil action for damages and/or penalties pursuant to Labor Code § 226, including statutory penalties civil penalties, reasonable attorneys' fees, and costs according to suit pursuant to Labor Code § 226 *et seq.*

## TENTH CAUSE OF ACTION

### WAITING TIME PENALTIES

**(Against All Defendants Except Defendant Michael Dominic)**

69.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

70.     This cause of action is brought pursuant to Labor Code §§ 201-203, which require an employer to pay all wages immediately at the time of termination of employment in the event the employer discharges the employee or the employee provides at least 72 hours of notice of his/her intent to quit.  In the event the employee provides less than 72 hours of notice of his/her intent to quit, said employee's wages become due and payable not later than 72 hours upon said employee's last date of employment.

71.     Defendants failed to timely pay Plaintiff all final wages due to them at the time of his separation including, among other things, unpaid amounts for underpaid overtime wages owed, and meal and rest period premium wages. Defendants' failure to pay all final wages was willful within the meaning of Labor Code § 203.

72.     Defendants' willful failure to timely pay Plaintiff his earned wages upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due.  Therefore, Plaintiff is entitled to compensation pursuant to Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

## ELEVENTH CAUSE OF ACTION

### FAILURE TO REIMBURSE BUSINESS EXPENSES

**(Against All Defendants Except Defendant Michael Dominic)**

73.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

74.     At all relevant times herein, Defendants were subject to Labor Code § 2802, which states that "an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"

75.     Due to Defendants' unlawful policy and practice of requiring employees to use their cellular phones in the performance of their job duties and purchase army style work boots, Defendants have violated Labor Code § 2802.

76.     Plaintiff is entitled to attorneys' fees and costs of suit pursuant to Labor Code § 2802(c) for bringing this action.

77.     Pursuant to Labor Code §2802(b), any action brought for the reimbursement of necessary expenditures carries interest at the same rate as judgments in civil actions. Thus, Plaintiff is entitled to interest, which shall accrue from the date on which he incurred the initial necessary expenditure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof;

B.     For general and special damages to compensate Plaintiff for any medical expenses and suffering;

C.     For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;

D.     For restitution and/or disgorgement;

E.     For an award of costs of suit and reasonable attorneys' fees;

F.     For an award of pre-judgment and post-judgment interest;

G.     For any and all statutory penalties associated with the violations of any of the Causes of Action plead in this Complaint;

1        H.     Upon the Sixth Cause of Action, for compensatory, consequential, general, and

2                 special damages according to proof pursuant to Labor Code §§ 204, 510, 558, 1194,

3                 and 1198;

4        I.     Upon the Seventh Cause of Action, for compensatory, consequential, general and

5                 special damages according to proof pursuant to Labor Code §§ 226.7, 512, and 558;

6        J.     Upon the Eighth Cause of Action, for compensatory, consequential, general and

7                 special damages according to proof pursuant to Labor Code §§ 226.7, 516, and 558;

8        K.    Upon the Nineth Cause of Action, for actual damages, statutory and civil penalties

9                 pursuant to Labor Code § 226, *et seq.*;

10       L.    Upon the Tenth Cause of Action, for statutory penalties pursuant to Labor Code §

11                 201-203;

12       M.   Upon the Eleventh Cause of Action, for compensatory, consequential, general and

13                 special damages according to proof pursuant to Labor Code § 2802; and

14       N.    For such other and further relief as the Court deems just and proper.

15                         **DEMAND FOR JURY TRIAL**

16      Plaintiff hereby demands a jury trial on all issues so triable.

17

18 DATED: May 8, 2024              STANSBURY BROWN LAW, PC

19

20                               _____

21                               DANIEL J. BROWN

22                               ETHAN C. SURLS
                                Attorneys for Plaintiff

23                               CORNELL NEALEY

24

25

26

27

28

**EXHIBIT B**

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

Ethan Surls

,

RE: **Notice to Complainant's Attorney**
CRD Matter Number: 202405-24639508
Right to Sue: Nealey / Deployed Services, LLC et al.

Dear Ethan Surls:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202405-24639508
Right to Sue: Nealey / Deployed Services, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 8, 2024

Cornell Nealey

,

RE:     **Notice of Case Closure and Right to Sue**
        CRD Matter Number: 202405-24639508
        Right to Sue: Nealey / Deployed Services, LLC et al.

Dear Cornell Nealey:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective May 8, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

**EXHIBIT B**

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Cornell Nealey                                        CRD No. 202405-24639508

                          Complainant,

vs.

Deployed Services, LLC
,

Michael Dominic
,

                          Respondents

---

**1.** Respondent **Deployed Services, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **Michael Dominic** individual as Co-Respondent(s).

**3.** Complainant **Cornell Nealey**, resides in the City of **,** State of **.**

**4.** Complainant alleges that on or about **October 30, 2023**, respondent took the following adverse actions:

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was terminated, suspended.

**Additional Complaint Details:** Claimant reported that a supervisory employee was sexually harassing a subordinate employee and was subsequently suspended and terminated as retaliation for doing so.

-1-

*Complaint – CRD No. 202405-24639508*

Date Filed: May 8, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT B**

1    VERIFICATION

2    I, **Ethan C. Surls**, am the **Attorney** in the above-entitled complaint.  I have read the
3    foregoing complaint and know the contents thereof.  The matters alleged are based
     on information and belief, which I believe to be true.
4
     On May 8, 2024, I declare under penalty of perjury under the laws of the State of
5    California that the foregoing is true and correct.

6                                                                        **Redondo Beach, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -2-

**EXHIBIT B**

# SUMMARY
# (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DEPLOYED SERVICES, LLC, a Nevada limited liability company; MICHAEL DOMINIC, an individual; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CORNELL NEALEY, an individual,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/10/2024** at 11:35:45 AM

Clerk of the Superior Court
By Danielle Cortez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Hall of Justice <br><br> 330 West Broadway, San Diego, CA 92101 | CASE NUMBER: *(Número del Caso):* <br><br> 37-2024-00021759-CU-WT-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel J. Brown; dbrown@stansburybrownlaw.com; 2610 1/2 Abbot Kinney Blvd., Venice, CA 90291;(323) 204-3124

| DATE: 05/13/2024 *(Fecha)* | Clerk, by *(Secretario)* | D. Cortez | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**EXHIBIT B**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

| PLAINTIFF(S) / PETITIONER(S): | Cornell Nealey |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): | Michael Domonic et.al. |

| NEALEY VS DEPLOYED SERVICES LLC [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER: |
| | 37-2024-00021759-CU-WT-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge: Carolyn Caietti                    Department: C-70

## COMPLAINT/PETITION FILED: 05/10/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 11/15/2024 | 10:15 am | C-70 | Carolyn Caietti |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>**TIME FOR SERVICE AND RESPONSE:**</u> The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>**JURY FEES:**</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>**COURT REPORTERS:**</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

<u>**ALTERNATIVE DISPUTE RESOLUTION (ADR):**</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

# NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**EXHIBIT B**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS: 330 West Broadway

MAILING ADDRESS: 330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME: Central

PLAINTIFF(S): Cornell Nealey

DEFENDANT(S): Michael Domonic et.al.

SHORT TITLE: NEALEY VS DEPLOYED SERVICES LLC [IMAGED]

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2024-00021759-CU-WT-CTL |
|---|---|

Judge: Carolyn Caietti                                    Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                                   ☐ Binding private arbitration

☐ Voluntary settlement conference (private)    ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                       ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____           Date: _____

_____           _____
Name of Plaintiff                                                        Name of Defendant

_____           _____
Signature                                                                    Signature

_____           _____
Name of Plaintiff's Attorney                                        Name of Defendant's Attorney

_____           _____
Signature                                                                    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  05/13/2024                                    _____
                                                                      JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)          **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          **Page: 1**
                                                           **EXHIBIT B**



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2024-00021759-CU-WT-CTL       CASE TITLE: Nealey vs Deployed Services LLC [IMAGED]

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
>        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
>        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** ***and***
>        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO.:<br>NAME:  Daniel J. Brown (SBN 307604);Ethan C. Surls (SBN 327605)<br>FIRM NAME: Stansbury Brown Law, PC<br>STREET ADDRESS: 2610 1/2 Abbot Kinney Blvd.<br>CITY:  Venice    STATE: CA    ZIP CODE: 90291<br>TELEPHONE NO.:  323-204-3124    FAX NO. :<br>E-MAIL ADDRESS:  dbrown@stansburybrownlaw.com; esurls@stansburybrownlaw.com<br>ATTORNEY FOR (Name):  Plaintiff | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

Plaintiff/Petitioner: Cornell Nealey
Defendant/Respondent: Deployed Services, LLC

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2024-00021759-CU-WT-CTL |
|---|---|

TO *(insert name of party being served):*  Deployed Services, LLC

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:  May 16, 2024

Ethan C. Surls
(TYPE OR PRINT NAME)            ▶      (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):*
      Notice of Case Assigment and Case Management Conference, Civil Case Cover Sheet, Alternative Dispute Resolution
      (ADR) Information Package, Stipulation to Use Alternative Dispute Resolution.

*(To be completed by recipient):*

Date this form is signed:  June 5, 2024

John Ayers-Mann attorney for Deployed Services, LLC

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,     ▶      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**EXHIBIT B**

# **PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                                     )     ss.
COUNTY OF LOS ANGELES   )

       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 2610 ½ Abbot Kinney Blvd. Venice, CA 90212

On June 7, 2024, I served the document listed below on the parties in this action as follows:

-  **NOTICE AND ACKNOWLEDGMENT OF RECEIPT**

☐   (BY MAIL)  I placed such envelope on the above date, with postage fully prepaid, for deposit in the U.S. Postal Service at my place of business at Venice, California, following the ordinary business practices of my place of business.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mail with the U.S. Postal Service.  Under that practice, such correspondence is deposited with the U.S. Postal Service the same day it is collected and processed in the ordinary course of business.

☐   (BY HAND DELIVERY)  I delivered to an authorized courier or driver authorized by _____ to receive documents to be delivered on the same date.

☐   (BY FEDERAL EXPRESS)  I am readily familiar with the practice of collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

X   (BY EMAIL) In accordance with California Code of Civil Procedure Section 1010.6 in compliance with the Judicial Council's Appendix I, Emergency Rules Related to Covid-19, Emergency Rule 12, I caused to be transmitted the document(s) described herein via the email address(s) listed on the attached service list.

X   (STATE)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 7, 2024, at Redondo Beach, California.

_____

Ethan C. Surls

**EXHIBIT B**

**<u>SERVICE LIST</u>**

Dana Peterson, Esq.
John T. Ayers-Mann, Esq.
SEYFARTH SHAW, LLP
2029 Century Park East, Ste. 3500
Los Angeles, CA 90067
dpeterson@seyfarth.com
JAyers-Mann@seyfarth.com

Attorneys for Defendant Deployed Services, LLC

**PROOF OF SERVICE**

STATE OF CALIFORNIA                  )
                                          )   SS

COUNTY OF LOS ANGELES         )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On **June 14, 2024** I served the within document(s):

**DEFENDANT DEPLOYED SERVICES, LLC ANSWER TO THE COMPLAINT**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☐ I delivered the within document to Nationwide Legal, Inc. for delivery to the person(s) at the address set forth below with instructions that such envelope be delivered personally on June 14, 2024.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Daniel J. Brown                         Attorneys for Plaintiff
Ethan C. Surls                            CORNELL NEALEY
STANSBURY BROWN LAW, PC
2610 ½ Abbot Kinney Blvd.           Tel:      (323) 204-3124
Venice, CA 90291                  E-mail:  dbrown@stansburybrownlaw.com
                                           esurls@stansburybrownlaw.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **June 14, 2024**, at Los Angeles, California.

_____
Maria Torres-Masferrer

PROOF OF SERVICE

**EXHIBIT B**



For questions or support please contact customer support at 213-249-9999 or legal@nationwidelegal.com

# EFILING ORDER SUMMARY

## ORDER INFORMATION

Order Number: 9836581

Date Submitted: 06/14/2024 12:42:09

Order Status: Pending

Date Closed:

:

Court Transaction Number: 22090664

Filing Status: Pending

Special Instructions: PLEASE ADVANCE COURT FEES.

Submitted By: efile3 3, efile3@nationwidelegal.com

Notifications:  efile3 3 (efile3@nationwidelegal.com)

## CASE INFORMATION

Case Number: 37-2024-00021759-CU-WT-CTL

Billing Code: LA532655

Case Title: Nealey vs Deployed Services LLC IMAGED

Case Category: Civil - Unlimited

Case Type: Wrongful Termination

Jurisdiction: Central Courthouse (Civil eFiling)

County: San Diego

Lead Client: Deployed Services LLC,

## DOCUMENTS

| No. | Title | Type | Status |
|-----|-------|------|--------|
| 1 | Answer | First Papers | |

## STATUTORY FEES

| Description | Amount |
|-------------|--------|
| Court Fees Advanced | $0.00 |

# EXHIBIT C

JVR No. 2309290020, 2023 WL 7487466 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Los Angeles County, California.

JANG v. CNTY. OF LOS ANGELES

BC587400
DATE OF FILING: July 07, 2015
DATE OF TRIAL/SETTLEMENT: August 29, 2023

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $603,609**

**EXPERT-WITNESSES:**
Plaintiff:
Economist: Mahla, Charles, Ph.D., Sacramento, CA
**ATTORNEY:**
Plaintiff:
Lawrance A. Bohm, Bohm Law Group Inc., Sacramento, CA
Kelsey K. Ciarimboli, Bohm Law Group Inc., Sacramento, CA
Kyle A. Pruner, Bohm Law Group Inc., Sacramento, CA
Brandon Ortiz, Ortiz Law Office Inc., Burbank, CA
Defendant:
David J. Weiss, David Weiss Law, Los Angeles, CA
Nicholas A. Weiss, David Weiss Law, Los Angeles, CA
Margaret B. Ikeda, David Weiss Law, Los Angeles, CA

JUDGE: Jon R. Takasugi

RANGE AMOUNT: $500,000 - 999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: Doctor

**DEFENDANT:**
Sex: O

Organization Type: Cnty. of Los Angeles

EXHIBIT C

**DAMAGES:**

Compensatory Pain & Suffering: $150,000

Compensatory Past Wages: $342,038

Compensatory Future Wages: $111,571

Total Compensatory Award: $603,609

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: true

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: true

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

EXHIBIT C

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: false

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General

**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State Statute

**General Statute: Whistleblower**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Plaintiff Timothy Jang, M.D., said he was worked as a physician and professor for defendant County of Los Angeles d/b/a Harbor-UCLA Medical Center. The plaintiff said he was the director of the ultrasound fellowship program at the defendant's medical center and was instructed by the chairman of the emergency department not to hire foreign doctors as fellows. The plaintiff claimed he disobeyed this instruction and reported it to the county and university, and also reported racist comments made by the chairman in the workplace. The plaintiff also alleged he made complaints regarding patient safety and reported that ultrasound machines did not comply with regulations. The plaintiff said that in response to his complaints, the defendant's chairman reportedly increased the plaintiff's clinical workload, refused to fund a fellow for one year, and refused to promote the plaintiff to senior physician on two occasions, despite the plaintiff being entitled to the position based on department's practices.

The plaintiff asserted retaliation in violation of the Fair Employment and Housing Act (FEHA) and whistleblower retaliation under California Labor Code Sec. 1102.5.

The plaintiff sought damages, including at least $172,060 for past lost earnings and $836,829 for future lost earnings.

The defendant denied the plaintiff's allegations, contending the chairman's actions were solely motivated by his legitimate efforts to safely manage a high-volume emergency room. The defendant alleged the plaintiff was responsible for the same clinical workload as all full-time faculty, faculty decided to rotate fellowship funding among the various fellowship program,

EXHIBIT C

and multiple senior physician items were reallocated based on the needs of the hospital. Additionally, the defendant said the chairman's decisions were well-supported by the faculty long before the plaintiff claimed he engaged in protected activity.

Jury Verdict Research
COURT: Superior

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

# Mark A. Crawford v. DIRECTV Inc.

No. BC417507

DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**
RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**
Plaintiff: David T. Factor; Economics; Pasadena, CA
**ATTORNEYS:**
Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)
Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)
JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**
In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on his original days off. He also submitted a note from his social worker which stated that viewing violent

EXHIBIT C

images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 1706150032, 2017 WL 2617753 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Sonoma County, California.

## SARGENT v. BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY; DAWSON

SCV255399

DATE OF FILING: May 05, 2016
DATE OF TRIAL/SETTLEMENT: March 15, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $387,895**

**Related Court Documents:**
Plaintiff's third amended complaint: 2015 WL 13388024

Plaintiff's trial brief: 2016 WL 9108349

Verdict form: 2017 WL 2463698

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Dustin L. Collier, Collier Law Firm, San Francisco, CA
Joshua Socks, Collier Law Firm, San Francisco, CA
VaLinda G. Kyrias, Law Office of VaLinda Kyrias, Petaluma, CA
Defendant:
Daralyn J. Durie, Durie Tangri L.L.P., San Francisco, CA
Sonali D. Maitra, Durie Tangri L.L.P., San Francisco, CA
Andrew L. Perito, Durie Tangri L.L.P., San Francisco, CA
Tim C. Saulsbury, Durie Tangri L.L.P., San Francisco, CA
William C. Hsu, California State University Office of the General Counsel, Long Beach, CA
Maria Lampasona, Lombardi, Loper & Conant L.L.P., Oakland, CA
Alexei Offil-Klein, Lombardi, Loper & Conant L.L.P., Oakland, CA
GayLynn K. Conant, Lombardi, Loper & Conant L.L.P., Oakland, CA
JUDGE: Nancy C. Shaffer

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Sonoma

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

EXHIBIT C

General Occupation: Professional

**DEFENDANT:**
Sex: O

Organization Type: Board of Trustees of California State University

Sex: M

Age: Adult

General Occupation: Middle Manager

Organization Type: Dawson

**DAMAGES:**
Compensatory Pain & Suffering: $116,000

Compensatory Other: $271,895

Total Compensatory Award: $387,895

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

EXHIBIT C

Loss Pay: false

Loss Seniority: false

Negative Eval: true

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: false

**Entity Type: Public Educational Institution**
**STATUTES**
**Primary Specific Statute**
Primary Name: General

**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State Statute

**General Statute: Whistleblower**
General Statute Discrimination: false

Specific Statute: General

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Thomas R. Sargent sued the Board of Trustees of the California State University (CSU) and his former supervisor, Craig Dawson for whistleblower retaliation claims under Cal. Lab. Code Sec. 1102.5, Cal. Lab. Code Sec. 6310, and Lab. Code Sec. 232.5(c). Sargent also brought OSHA claims against CSU for violating Cal. Lab. Code Secs. 6400-6404, 6406, 6407(a) and 6401.7(b). The plaintiff, employed as an Environmental Health and Safety Specialist, claimed he was responsible for ensuring compliance with state and federal safety requirements, identifying and making recommendations to fix unsafe working conditions, and interacting with or reporting incidents to various outside governmental agencies. Sargent asserted

**EXHIBIT C**

that in May 2012, he found a chalky substance on the room of a school building, which tested positive for lead, indicating the lead-based paint used on the building many years before was chipping and flaking, leaving behind a residue. The plaintiff said he objected to a facilities department plan to use a leaf blower to clear the lead dust and debris in preparation for a re-roofing project. He asserted that Dawson met with him and told him his regulatory email would kill the project with costs, and ordered a maintenance mechanic to clear the lead-contaminated substance from the roof gutters with a leaf blower, and then disperse the debris over a wider field. Sargent claimed that he then collected samples from foliage and grounds around the building that revealed lead concentrations seven times greater than the hazardous waste limits set by California. Sargent said he continued to object to unsafe practices, which eventually resulted in complaints and workers' compensation claims by employees' union members, and resulted in a Cal/OSHA citation to the school. Sargent asserted that he filed a complaint that Dawson allegedly engaged in improper governmental activity by performing unlicensed asbestos abatement work at two private residences, but after his complaints, CSU sent university police to surveil and intimidate him. He claimed Dawson ordered him not to release further information about the lead contamination outside his department, but he continued to make protected disclosures to government agencies. He alleged that Dawson threatened to take away his alternative work schedule, and prohibited him from taking any further samples of suspected hazardous materials without express prior approval from him. He claimed in retaliation Dawson ordered him to move more than 4,000 pounds of sewage-contaminated debris to a truck by hand, that the retaliation continued in a similar fashion over various environmental quality issues, and he was placed on a performance improvement plan, given unsatisfactory performance reviews and suspended, but after he took a leave of absence, he decided not to return to work. The defendants denied liability and argued that Sargent resigned after years of conflict with Dawson, and that he was wrong about the health and safety issues. A jury found in favor of Sargent on his whistleblower retaliation claim, awarding him $152,980 in past economic damages, $118,915 in future economic damages, $18,00 for mental suffering, $62,000 for inconvenience, and $18,000 for anxiety and $18,000 for emotional distress. The jury found for the plaintiff on several of his PAGA OSHA claims, but damages were not determined on the verdict form.

Jury Verdict Research
COURT: Superior

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

2022 WL 20508720 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

WEST'S JURY VERDICTS - CALIFORNIA REPORTS
Superior Court, Los Angeles County, California.

Watson v. Janssen Pharmaceuticals Inc. et al.

**Type of Case:**

Labor & Employment • Termination/Constructive Discharge

Labor & Employment • Retaliation

Labor & Employment • Age

Labor & Employment • Race/National Origin

Labor & Employment • Gender

Labor & Employment • Disability/Medical Condition

Labor & Employment • Wage Disputes


**Synopsis: Sales representative claimed she was terminated by employer for discriminatory reasons**

**Jurisdiction:**
State: California
County: Los Angeles

**Docket/File Number:** BC696761

**Trial Type: Jury**
**Verdict: Plaintiff, $890,080**

**Range Amount:** $500,000 - 999,999

Date of Filing: March 06, 2018
**Verdict/Judgment Date:** November 09, 2022

**Judge:** Unavailable
**Attorneys:**
Plaintiff: Carol L. Gillam, The Gillam Law Firm, Los Angeles, CA; Sara Heum, The Gillam Law Firm, Los Angeles, CA
Defendants: Mark A. Neubauer, Carlton Fields LLP, Los Angeles, CA; Meredith M. Moss, Carlton Fields LLP, Los Angeles, CA; Stephanie G. Chau, Carlton Fields LLP, Los Angeles, CA

**Breakdown of Award:**
**$870,215 to plaintiff from defendant Janssen Pharmaceuticals Inc. for past economic damages**
**$3,758 to plaintiff from defendant Janssen Pharmaceuticals Inc. for unpaid wages**
**$16,106 to plaintiff from defendant Janssen Pharmaceuticals Inc. for waiting time penalty**

**Summary of Facts:**

EXHIBIT C

Plaintiff Bonnie Watson, a 47-year-old African American woman, said she worked as a sales representative for defendant Janssen Pharmaceuticals Inc., under the supervision of defendant James Traino, a manager. The plaintiff said she filed several complaints about Traino for treating her differently and worse than her white male and female coworkers, but Janssen apparently failed to investigate these complaints. The plaintiff said Traino retaliated against her by excluding her from working on the hospital initiative, giving her low ratings on her 2016 performance review, and selecting her for a travel and expenses audit. The plaintiff said she became disabled when she developed anxiety and depression during her employment, took a 12-week leave of absence beginning in December 2016, and requested to work three days per week upon her return to work in June 2017. The plaintiff said the defendants failed to accommodate her disability or engage in the required interactive process and failed to pay her for all hours worked. The plaintiff said she was terminated in June 2017, and the defendants reportedly claimed the reasons for her termination were customer relations, her receipt of a final written warning letter because of those customer relations issues, and the expense audit report findings while she was still on a final written warning.

The plaintiff asserted claims for gender, race, color, and ancestry discrimination, disability discrimination, retaliation, harassment, failure to provide reasonable accommodations for a disability, failure to engage in the interactive process, failure to take reasonable steps to prevent/remedy discrimination, harassment, and/or retaliation, in violation of FEHA, retaliation based on FEHA, retaliation based on quid pro quo, violation of California Family Rights Act, wrongful discharge in violation of public policy, and failure to pay all wages due at termination and waiting time penalties.

The plaintiff sought damages, including punitive damages.

The defendant denied the plaintiff's allegations, contending the plaintiff was terminated for legitimate, non-discriminatory reasons. Specifically, the defendant said the plaintiff had difficulties getting along with coworkers, had negative interactions with customers, and was given a final written warning in April 2016 by the defendant after she was kicked out of two doctor's offices. The defendant said issues arose from the plaintiff's expense audit and because she had already received a final written warning the prior year, termination was the only option. Janssen also said it accommodated the plaintiff's disability with a six-month paid medical leave and reduced work schedule and there was no evidence of Traino harassing the plaintiff because of her protected status.

JVR 2306210039

---

**End of Document**                                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 2308010007, 2023 WL 4890639 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

WHITHORN v. CITY OF WEST COVINA

20STCV08916
DATE OF FILING: March 03, 2020
DATE OF TRIAL/SETTLEMENT: May 05, 2023

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $4,145,595**

**EXPERT-WITNESSES:**
Defendant:
City Management: Gould, Rodney, Santa Monica, CA
**ATTORNEY:**
Plaintiff:
Carney R. Shegerian, Shegerian & Associates Inc., Los Angeles, CA
John David, Shegerian & Associates Inc., Los Angeles, CA
Anna Olevsky, Shegerian & Associates Inc., Los Angeles, CA
Defendant:
Thomas M. O'Connell, Buchalter APC, Los Angeles, CA
Jennifer M. Misetich, Buchalter APC, Los Angeles, CA
Natalie Bryans, Buchalter APC, Los Angeles, CA

JUDGE: Maurice A. Leiter

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult, 50

General Occupation: Fire Fighter

**DEFENDANT:**
Sex: O

Organization Type: City of West Covina

EXHIBIT C

**DAMAGES:**

Compensatory Pain & Suffering: $2,567,849

Compensatory Other: $1,577,746

Total Compensatory Award: $4,145,595

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

EXHIBIT C

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State

**General Statute: Age Discrimination**
General Statute Discrimination: true

Specific Statute: General

**General Statute: Retaliation**
General Statute Discrimination: false

Specific Statute: State Statute

**General Statute: Whistleblower**
General Statute Discrimination: false

Specific Statute: General

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Plaintiff Larry Whithorn, a 50-year-old male employed as the fire chief for the city of West Covina, Calif. who reportedly received outstanding performance reviews throughout his employment, said he had actual and/or perceived disabilities that

EXHIBIT C

required him to take medical leaves to undergo surgeries for a serious medical condition and for a knee injury. The plaintiff said when he took additional medical leaves for subsequent surgeries and to care for his ill father, his supervisor informed him that he was receiving pressure to require the plaintiff to come to work or replace him with another employee.

The plaintiff contended during his employment, he complained to the defendant's Human Resources (HR) director about unethical conduct, and shortly thereafter he was allegedly harassed, verbally assaulted and/or threatened and subjected to a hostile work environment. The plaintiff said he also heard rumors and/or remarks that his employment would be terminated and/or that he should retire.

The plaintiff claimed after he reported the incidents to HR and filed a grievance with the acting city manager, his grievance was denied and he was asked when he planned to retire. The plaintiff said he was then asked by the city attorney and the interim city manager to resign. According to the plaintiff, when he refused to resign, his employment was terminated.

The plaintiff said he was subjected to a hostile work environment, harassment and subsequent adverse employment actions due to his age and actual and/or perceived disabilities and for taking medical leave for his disabilities. The plaintiff also said he was retaliated against after taking medical leave and after he opposed allegedly illegal and/or unethical conduct.

The plaintiff asserted multiple claims, which included disability and age discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA), failure to prevent discrimination and/or retaliation in violation of FEHA, whistleblower retaliation in violation of the California Labor Code Section 1102.5 et seq., and claims for wrongful termination and intentional infliction of emotional distress (IIED).

For damages, the plaintiff sought general and special damages in excess of $25,000, as well as punitive damages for the defendant's alleged wrongful conduct, together with costs and attorney fees.

The defendant denied liability and denied it wrongfully terminated the plaintiff's employment or took any unlawful actions against him. Rather, the defendant contended the plaintiff's employment was terminated due to his job performance and/or poor leadership and was also in response to the Firefighters Association's vote of no confidence.

The defendant further disputed the nature and extent of the plaintiff's claimed damages.


Jury Verdict Research
COURT: Superior

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 2306080040, 2022 WL 20306677 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

YOUNG v. DEPT. OF PUBLIC SOCIAL SERVS.

BC609911

DATE OF TRIAL/SETTLEMENT: October 26, 2022

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $3,500,000**

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Angel J. Horacek, Law Offices of Angel J. Horacek PC, Culver City, CA
Defendant:
David S. Miller, Martin & Martin LLP, Los Angeles, CA
Renee R. Rubin, Martin & Martin LLP, Los Angeles, CA
Janet A. Ariza, Martin & Martin LLP, Los Angeles, CA

JUDGE: Jon R. Takasugi

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

**DEFENDANT:**
Sex: O

Organization Type: Dept. of Public Social Servs.

**DAMAGES:**
Compensatory Pain & Suffering: $2,526,490

Compensatory Other: $973,510

Total Compensatory Award: $3,500,000

EXHIBIT C

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: true

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

EXHIBIT C

Termination: false

**Entity Type: Government Entity**
STATUTES
**Primary Specific Statute**
Primary Name: General

**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State Statute

**General Statute: Whistleblower**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Plaintiff Lorna Young said she was employed as an eligibility worker for the city with defendant Department of Public Social Services (DPSS). The plaintiff reportedly complained that the bilingual unit, established by the former director of the defendant facility she reported to, resulted in the racial segregation of Latino and Black employees and an uneven distribution of work that distributed more work to Black employees, constituting racial discrimination. The new director that took over for the former director apparently refused to desegregate the unit.

The plaintiff reportedly met with a group of union members and others and engaged in a campaign against the new director, by which employees and others would present the new director with a list of violations. The new director refused to allow them to present her with the petition when they arrived at her office and was struck by a door handle. The new director reportedly said the plaintiff struck her and the plaintiff denied it, but the defendant imposed a 30-day suspension without pay on the plaintiff.

Following her suspension, the defendant reportedly transferred the plaintiff to a different facility, where she was subjected to a hostile work environment and treated differently than other employees by her supervisors. Specifically, the plaintiff alleged the defendant's facility failed to provide her a security clearance to perform her job, forced her to sit directly under an HVAC vent, failed to provide her with a work station that had been ergonomically set up according to her work restrictions, and denied her ability to take protected family medical leave to care for her ill father. The plaintiff claimed she was experiencing work-related stress due to the environment and was constructively terminated. The defendant apparently failed to reinstate her and failed to timely produce her personnel file.

The plaintiff asserted claims for retaliation in violation of the Fair Employment and Housing Act (FEHA) and whistleblower retaliation in violation of Sec. 1102.5 of the California Labor Code.

The plaintiff sought damages, reportedly including $1,160,595 in economic losses.

The defendant denied liability, contending that the alleged adverse employment actions taken were made following standard policies and practices and had nothing to do with the plaintiff's complaints. The defendant said the plaintiff did not act

EXHIBIT C

appropriately and did not act in accordance with county policies and procedures when she was engaging in the campaign against the defendant's director, and that her behavior did not constitute a protected activity.

Jury Verdict Research
COURT: Superior

**End of Document**                                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 1612050044, 2016 WL 7094518 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
Superior Court, Sacramento County, California.

## CARROLL v. ARMSTRONG; POPE; STATE OF CALIFORNIA COMMISSION ON TEACHER CREDENTIALING

34-2012-00135527-CU-OE-GDS

DATE OF FILING: November 14, 2012
DATE OF TRIAL/SETTLEMENT: August 10, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $3,064,528**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's complaint: 2012 WL 12862565

Plaintiff's trial brief: 2016 WL 4367485

Defendant's trial brief: 2016 WL 4367480

Judgment: 2016 WL 5935601

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Dan Siegel, Siegel & Yee, Oakland, CA
Plaintiff: Jalle Dafa, Siegel & Yee, Oakland, CA
Defendant: Kristin M. Daily, Office of the Attorney General, Sacramento, CA
Defendant: Jerry Deschler, Office of the Attorney General, Sacramento, CA
Defendant: Susan E. Slager, Office of the Attorney General, Sacramento, CA
Defendant: Chris A. Knudsen, Office of the Attorney General, San Diego, CA
JUDGE: Russell L. Hom

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: Sacramento

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

EXHIBIT C

**DEFENDANT:**
Sex: N

Organization Type: Pope

Sex: N

Organization Type: Armstrong

Sex: O

Organization Type: State of California Commission on Teacher Credentialing

**DAMAGES:**
Compensatory Pain & Suffering: $750,000

Compensatory Past Wages: $481,225

Compensatory Future Wages: $932,200

Compensatory Other: $681,103

Total Compensatory Award: $2,844,528

Punitive Damages: $220,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

EXHIBIT C

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute

**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Kathleen Carroll, an attorney, sued Mary Armstrong, Lee Pope and the State of California Commission on Teacher Credentialing for violations of the California Whistleblower Protection Act, Cal. Gov't Code Sec. 8547.8(c), pursuant to Cal. Lab. Code Sec. 1102.5. The plaintiff, who worked as staff counsel, claimed her supervisors, Lee and Armstrong, reported a backlog of disciplinary allegations against California public school teachers when Armstrong reported to the Commission that there were few backlogs, but this was after an employee had recently expressed concern about the large backlogs. Carroll

EXHIBIT C

asserted that she believed the backlogs violated the California Education Code, the Americans with Disabilities Act, and the 14th Amendment of the United State Constitution. The plaintiff alleged that about one month after she reported the backlog to a whistleblower hotline, she was questioned by an investigator, hired by the Commission, and received a warning from Human Resources after she refused to continue participating because the investigator was antagonistic and accusatory, and repeatedly rephrased her answers incorrectly. Carroll claimed she provided additional information about Armstrong's and Pope's conduct for which she believed violated various laws during a subsequent audit investigation, but during the audit she was denied a raise, and was placed on leave. She argued that the defendants eventually terminated her employment for fabricated reasons following an investigation by Pope. According to Carroll, the audit report eventually found the Commission had been grossly mismanaged, neglected cases of misconduct, and led to the resignation of General Counsel Armstrong and the Executive Director. The defendants denied the allegations and contended the plaintiff's employment was terminated for valid reasons, including incompetency, inefficiency, inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment of the public or other employees, willful disobedience, and other failures of good behavior and unlawful harassment. The defendant denied the plaintiff made a protected disclosure, and denied any causal nexus between any purported disclosure and her termination. A jury found for the plaintiff and awarded her $481,225 for past lost earnings, $932,200 for future lost earnings, $681,103 for future mention plan benefits, and $750,000 for emotional distress, pain and suffering. The jury also awarded Carroll $90,000 in punitive damages against Armstrong, and $130,000 punitive damages against Pope.

Jury Verdict Research
COURT: Superior

---

**End of Document** <span style="float:right">© 2024 Thomson Reuters. No claim to original U.S. Government Works.</span>

EXHIBIT C

13 Trials Digest 9th 7, 2003 WL 24304125 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Riverside County, California.

## Department of Fair Employment and Housing vs. County of Riverside

**TOPIC:**

Synopsis: Worker who was injured on the job alleges disability discrimination

Case Type: Labor & Employment; Disability/Medical Condition; Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: RIC352666

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: October 16, 2003

JUDGE: Dallas Holmes

**ATTORNEYS:**

Plaintiff: Joseph H. Duff, Department of Fair Employment and Housing, Los Angeles.; Paul R. Ramsey, Department of Fair Employment and Housing, Los Angeles.; Eddie L. Washington, Department of Fair Employment and Housing, Los Angeles. Defendant: Bruce E. Disenhouse, Kinkle, Rodiger and Spriggs, Riverside.; Intervenor: Deborah A. Krane, Law Offices of Deborah A. Krane, Burbank.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $460,000

Range: $200,000-$499,999
$160,000 economic; $300,000 non-economic.

Trial Type: Jury

Trial Length: Not reported.

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Arnold D. Purisch Ph.D., neuropsychologist, Laguna Hills, (949) 829-8141.
Defendant: William Soltz Ph.D., psychologist, San Bernardino, (909) 886-4554.; Tony L. Strickland Ph.D., neuropsychologist, Playa Del Rey, (323) 563-5915.

**TEXT:**

EXHIBIT C

## CASE INFORMATION

### FACTS/CONTENTIONS

According to Plaintiff: Plaintiff-in-intervention, William Clark, was employed by defendant County of Riverside as a sheriff investigator. Clark suffered an on-the-job injury. He alleged that he subsequently became disabled and requested a reasonable accommodation for his claimed disability. He claimed that defendant failed and refused to engage in a timely, good faith interactive process with him for the purposes of ascertaining the precise parameters of the reasonable accommodations necessary to return him to his employment with defendant.

On or about October 13, 1999, Clark filed a charge of discrimination against defendant with plaintiff Department of Fair Employment and Housing. Plaintiff in turn filed this proceeding on or about December 26, 2000, naming Clark as the Real Party in Interest.

Plaintiff and Clark are claiming that he was injured emotionally and financially by defendant's actions.

Defendant disputed the nature and extent of the claims.

### CLAIMED INJURIES

According to Plaintiff: Emotional distress.

### CLAIMED DAMAGES

According to Plaintiff: $62,398 to $106,080 lost wages; $300,000 emotional distress damages.

### SETTLEMENT DISCUSSIONS

According to Plaintiff: Not reported.

Trials Digest, A Thomson/West business
Riverside County Superior Court/Central

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

# Fred Denenberg v. California Department of Transportation

No. GIC836582

DATE OF VERDICT/SETTLEMENT: September 16, 2006

TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**
RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA
Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA
**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)
JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: San Diego

**INJURIES:** Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.

**Facts:**
In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office

EXHIBIT C

technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in 1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any

**EXHIBIT C**

other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 1703300002, 2016 WL 8649664 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

# HAWKINS v. CITY OF LOS ANGELES

BC541066

DATE OF FILING: April 01, 2014
DATE OF TRIAL/SETTLEMENT: June 17, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $427,162**

**Related Court Documents:**
Plaintiff Hawkins' first amended complaint: 2014 WL 12669302

Verdict form (Hawkins): 2016 WL 8446427

Verdict form (Kim): 2016 WL 8446424

Judgment on special verdict (Hawkins): 2016 WL 8452870

First amended ruling and order on defendant's motion for judgment notwithstanding the verdict: 2016 WL 8452866

First amended ruling and order on defendant's motion for a new trial: 2016 WL 8452869

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
David P. Myers, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Doug Smith, The Myers Law Group A.P.C., Rancho Cucamonga, CA
Defendant:
Shanise Black, Office of the City Attorney, Los Angeles, CA
Dennis Kong, Office of the City Attorney, Los Angeles, CA
JUDGE: Ernest M. Hiroshige

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Todd Hawkins: M

Age: Adult

General Occupation: Professional

EXHIBIT C

Sex: Hyung Kim: M

Age: Adult

General Occupation: Professional

**DEFENDANT:**
Sex: O

Organization Type: City of Los Angeles

**DAMAGES:**
Compensatory Pain & Suffering: Todd Hawkins: $150,000

Compensatory Other: Todd Hawkins: $88,531

Total Compensatory Award: Todd Hawkins: $238,531

Compensatory Pain & Suffering: Hyung Kim: $100,000

Compensatory Other: Hyung Kim: $88,631

Total Compensatory Award: Hyung Kim: $188,631

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

EXHIBIT C

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General


**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false

Specific Statute: State


**General Statute: Race/Color Discrimination**
General Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
Todd Hawkins and Hyung Kim, former Administrative Hearing Officers, sued the City of Los Angeles for retaliation, under Labor Code Sec. 1102.5(b). Hawkins, an African-American, also brought a claim under Govt. Code Sec. 12940(h) for retaliation based on race. The plaintiffs claimed they engaged in protected activity when they disclosed that they were allegedly being pressured by supervisors to change certain decisions on parking citations in favor of the City, in violation of California Vehicle Code Sec. 40215(c)(3) and the Bane Act, Civil Code Sec. 52.1. The plaintiffs argued that when they complained about allegedly being coerced into depriving motorists of their procedural due process rights, they spoke out as a matter of public concern as citizens, and not as part of their official duties, pursuant to 42 U.S.C.A. Sec. 1983. However, the plaintiffs claimed in retaliation, they were disciplined, and then terminated. Hawkins also claimed he was retaliated against for reporting discriminatory and harassing statements made to him by a supervisor, based on his race. The City denied

EXHIBIT C

liability and contended that the plaintiffs failed to prove they engaged in protected activity. The City argued that the plaintiffs were discharged for legitimate, independent reasons, that no law was violated because the alleged activity complained of concerned written City procedures, and that any changes to decisions were made to correct clerical mistakes. The jury found for the plaintiffs. Hawkins was awarded $88,531 in economic damages and $150,000 in non-economic damages. The court later awarded Hawkins an additional $33,952 in costs. The jury awarded Kim $88,631 in economic damages and $100,000 in non-economic damages, but found for the City on Kim's Sec. 1983 claim. The City's motion for judgment not withstanding the verdict or a new trial was denied. This case was consolidated with docket number BC543766.

Jury Verdict Research
COURT: Superior

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 1703270032, 2017 WL 1136098 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, San Francisco County, California.

# HOEPER v. CITY AND COUNTY OF SAN FRANCISCO

CGC-15-543553

DATE OF INCIDENT: January 07, 2014
DATE OF FILING: January 07, 2015
DATE OF TRIAL/SETTLEMENT: March 17, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $2,029,357**

**Related Court Documents:**
Defendant's memorandum in support of summary judgment motion: 2016 WL 8417259

Plaintiff's memorandum opposing defendant's motion for summary judgment: 2016 WL 8417260

Order denying defendant's motion for summary judgment: 2016 WL 8411837

Plaintiff's trial brief: 2017 WL 839032

Defendant's trial brief: 2017 WL 839034

Verdict: 2017 WL 1080630

**EXPERT-WITNESSES:**
Plaintiff:
Economist: Allman, Philip, Ph.D., San Francisco, CA
Defendant:
Economist: Cohen, Mark, Udinsky Group, Berkeley, CA
**ATTORNEY:**
Plaintiff:
Therese Y. Cannata, Cannata, O'Toole, Fickes & Almazan L.L.P., San Francisco, CA
Karl Olson, Ram, Olson, Cereghino & Kopczynski L.L.P., San Francisco, CA
Defendant:
John W. Keker, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Susan J. Harriman, Keker, Van Nest & Peters L.L.P., San Francisco, CA
Jennifer A. Huber, Keker, Van Nest & Peters L.L.P., San Francisco, CA

JUDGE: Lynn O'Malley-Taylor

RANGE AMOUNT: $2,000,000 - 4,999,999

STATE: California
COUNTY: San Francisco

EXHIBIT C

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

General Occupation: Attorney

**DEFENDANT:**
Sex: O

Organization Type: City and County of San Francisco

**DAMAGES:**
Compensatory Pain & Suffering: $1,291,409

Compensatory Past Wages: $601,630

Compensatory Future Wages: $136,318

Total Compensatory Award: $2,029,357

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: true

EXHIBIT C

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State Statute

**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Specific Statute: General

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Joanne Hoeper, a former Chief Trial Deputy, brought this action against the City and County of San Francisco for Whistleblower retaliation, in violation of Cal. Lab. Code Sec. 1102.5 and Cal Gov't Code Sec. 12653. The plaintiff claimed in December 2011, an FBI agent gave her a tip about a possible fraudulent scheme, which involved payments by the defendant's claims bureau to property owners and plumbing companies to replace sewer lines purportedly damaged by the roots of city-owned trees. Hoeper asserted that she began an investigation which discovered that the city had paid out over $20 million in suspect claims, and that the claims bureau's assistant chief had illegally approved claims in which he or his family members had a financial interest. The plaintiff asserted that she first reported the fraudulent scheme during mid-April 2012 during a meeting with the City Attorney and the Managing City Attorney, and later provided a detailed report of her findings. She said the city attorney then began planning, without her knowledge, to remove her as Chief Trial Deputy, and transfer her to the San Francisco District Attorney's Office, and she was transferred in July 2012 without first arranging for a replacement. Hoeper argued that she was fired one day after the City Attorney was re-elected to a new term, and this was in retaliation for engaging in protected activity. The defendant denied the allegations and claimed that it terminated Hoeper for

EXHIBIT C

legitimate, non-retaliatory reasons, that the city attorney had already decided to remove her prior to the report about allegedly improper sewer claims because he had lost confidence in her judgment and her management of the trial team. The defendant argued that the City Attorney was concerned about the plaintiff's failure to litigate cases in a cost-effective manner, her inability to conduct proper cost-benefit analyses about settlement decisions, and her failure to keep him informed about the city's liability and exposure in significant cases until just before trial. It claimed that the city attorney attempted to address the issues with the plaintiff's performance by splitting the trial team and taking away responsibility for the most complex cases from the plaintiff. The defendant asserted that the City Attorney had begun searching for plaintiff's replacement during 2010, and spoke to fourteen candidates through February 2012. It claimed that the city attorney specifically created a temporary transfer position for Hoeper at the District Attorney's office to allow her to work until she turned 60 and reached 20 years of service. The jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress, mental anguish and humiliation.

Jury Verdict Research
COURT: Superior

**End of Document**                                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Orange County, California.

# LIEMANDT v. MEGA RV CORP.

30-2010-00388086

DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

EXHIBIT C

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0


**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

EXHIBIT C

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0

**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

2023 WL 11156548 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West
WEST'S JURY VERDICTS - CALIFORNIA REPORTS
Superior Court, Los Angeles County, California.

Astudillo v. Prats Inc.

**Type of Case:**

Labor & Employment • Disability/Medical Condition

Labor & Employment • Discrimination

Labor & Employment • Retaliation

Labor & Employment • Termination/Constructive Discharge

Labor & Employment • Violation of Public Policy

Labor & Employment • Wage Disputes

**Synopsis: Employee was hospitalized, his employment was terminated, and he was not fully paid wages**

**Jurisdiction:**
State: California
County: Los Angeles

**Docket/File Number:** BC715284

**Trial Type: Jury**
**Verdict: Plaintiff, $347,788**

**Range Amount:** $200,000 - 499,999

Date of Filing: July 24, 2018
**Verdict/Judgment Date:** March 16, 2023

**Judge:** Stephen I. Goorvitch
**Attorneys:**

Plaintiff: Kaveh S. Elihu, Employee JusticeLegal Group PC, Los Angeles, CA; Samuel J. Moorhead, Employee JusticeLegal Group PC, Los Angeles, CA
Defendant: Jeff Katofsky, Law Office of Jeff Katofsky, Sherman Oaks, CA; Michael Leff, Law Office of Jeff Katofsky, Sherman Oaks, CA

**Breakdown of Award:**
**$13,000 to plaintiff for past economic loss/lost earnings**
**$50,000 to plaintiff for past emotional distress**
**$30,000 to plaintiff for future emotional distress**
**$1,990 to plaintiff for unpaid wages**
**$2,798 to plaintiff for unpaid overtime**
**$250,000 to plaintiff for punitive damages**

EXHIBIT C

**Summary of Facts:**

Plaintiff Alejandro Astudillo said he worked as an electrician for defendant Prats Inc. and was hospitalized due to gallstones. He reportedly submitted a medical note to the defendant explaining his disability and related absence. He said the defendant did not request further medical documentation, did not request a return-to-work date, and did not ask about possible accommodations.

The defendant reportedly sent an e-mail to a supplier, indicating the plaintiff was no longer an employee. The plaintiff said he communicated with the defendant that he feared the e-mail indicated he had been fired, and the defendant failed to respond.

The plaintiff said he concluded his employment was terminated. He reportedly was not paid all outstanding wages, including overtime wages.

The plaintiff asserted disability discrimination, retaliation, the failure to prevent discrimination, the failure to provide a reasonable accommodation, the failure to engage in a good faith interactive process, wrongful termination in violation of public policy, and the failure to pay wages and overtime compensation.

The plaintiff sought damages, including punitive damages.

The defendant denied it discriminated against or terminated the plaintiff. It claimed the plaintiff voluntarily left his employment.

The defendant denied that the employee who sent the e-mail to the supplier had any authority to take any tangible employment action against an employee and or had any supervisory duties. It claimed that after the supplier forwarded the e-mail to the plaintiff, the plaintiff failed to contact it and inquire as to his employment status. It also asserted that after he was released from the hospital, he did not return to work and did not communicate with it to inform it of his health status or inability to work.

The defendant contended the plaintiff was unable to perform the essential functions of his job after the hospitalization since he could barely get out of bed and he never requested a change in job duties.

JVR 2404220026

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 2004090009, 2020 WL 1812491 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

ORTEGA v. CARSON WILD WINGS LLC

BC677388

DATE OF INCIDENT: April 11, 2017

DATE OF FILING: September 26, 2017

DATE OF TRIAL/SETTLEMENT: February 11, 2020

**SUMMARY**

**Outcome: Plaintiff Verdict**

**Total: $300,000**

**Related Court Documents:**

Plaintiff's complaint: 2017 WL 11508147

Verdict: 2020 WL 1667871

Verdict (punitive damages): 2020 WL 1667875

**EXPERT-WITNESSES:**

**ATTORNEY:**

Plaintiff:

Jonathan M. Lebe, Lebe Law A.P.L.C., Los Angeles, CA

Rodney Mesriani, Mesriani Law Group A.P.L.C., Los Angeles, CA

Defendant:

Keith J. Barnett, Troutman Sanders LLP, Atlanta, GA

Wendy A. Sugg, Troutman Sanders L.P., Irvine, CA

JUDGE: Terry A. Green

RANGE AMOUNT: $200,000 - 499,999

STATE: California

COUNTY: Los Angeles

**SUMMARY**

**PLAINTIFF:**

Sex: F

Age: Adult

General Occupation: Food Service Worker

**DEFENDANT:**

EXHIBIT C

Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: Carson Wild Wings LLC

**DAMAGES:**
Compensatory Pain & Suffering: $128,000

Compensatory Past Wages: $52,000

Compensatory Future Wages: $20,000

Total Compensatory Award: $200,000

Punitive Damages: $100,000

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

EXHIBIT C

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
STATUTES
**Primary Specific Statute**
Primary Name: State Statute


**Primary General Statute**
**Primary Name: Whistleblower**
Primary General Statute Discrimination: false

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Jasmin Ortega brought claims against defendant Carson Wild Wings LLC based on whistleblower retaliation under Cal. Lab. Code Sec. 1102.5, retaliation for engaging in protected activity under Cal. Lab. Code Sec. 98.6, wrongful termination in violation of public policy and negligent and intentional infliction of emotional distress. Ortega said she began working for defendant as a server, Dec. 28, 2013. During her employment, Ortega said defendant subjected her to numerous wage and hour violations, including (1) directing her to work off-the-clock before and after her shifts, performing duties like cleaning and stocking; (2) failing to pay her a higher wage when she acted as a trainer; (3) theft of tips; (4) altering her time records to reduce her work hours; (5) failing to pay overtime when she worked more than eight hours per day and 40 hours per week; and (6) failing to provide uninterrupted, off-duty meal periods. According to Ortega, on April 6 and April 7, 2017, defendant's management instructed her to clock out, work through the meal period because the restaurant was busy and no one was available to relieve her, and take

EXHIBIT C

her break 'later.' After her shift ended, Ortega said she spoke to her supervisor, complaining that she was missing her breaks and defendant was subjecting her to other wage and hour violations. During the conversation, the defendant's manager apparently walked into the conversation, told Ortega to 'calm down,' acknowledged the wage and hour violations, and promised that 'things were going to improve.' When Ortega showed up to work on April 11, 2017, defendant's general manager reportedly asked her to wait outside. After an hour, defendant's general manager allegedly came out and told Ortega she was 'suspended pending termination.' According to Ortega, the reasons for her suspension were pretextual and defendant terminated her for her protected activity and whistleblowing about the defendant's wage and hour violations. The defendant apparently denied liability. The jury returned a verdict for plaintiff on her claims for whistleblower retaliation, retaliation for engaging in a protected activity, wrongful termination in violation of public policy and intentional and negligent infliction of emotional distress. Jurors awarded the plaintiff $200,000 in damages and $100,000 in punitive damages.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

JVR No. 2303290013, 2022 WL 19330729 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2024 Thomson Reuters/West

Superior Court, Los Angeles County, California.

ARGUETA v. NORTH RANCH BODYCRAFT & GLASS INC.

19STCV40826
DATE OF INCIDENT: September 24, 2018
DATE OF FILING: November 13, 2019
DATE OF TRIAL/SETTLEMENT: August 31, 2022

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $301,600**

**EXPERT-WITNESSES:**
Plaintiff:
Psychologist: Mangassarian, Selina, Psy.D., CFNA, Sherman Oaks, CA
**ATTORNEY:**
Plaintiff:
Kaveh S. Elihu, Employee Justice Legal Group PC, Los Angeles, CA
Rhett T. Francisco, Employee Justice Legal Group PC, Los Angeles, CA
Christopher J. DeClue, Employee Justice Legal Group PC, Los Angeles, CA
Defendant:
John P. Boggs, Fine, Boggs & Perkins LLP, Long Beach, CA
David J. Reese, Fine, Boggs & Perkins LLP, Long Beach, CA
Daniel J. Padova, Fine, Boggs & Perkins LLP, Long Beach, CA

JUDGE: Steven J. Kleifield

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult, 62

General Occupation: Mechanic

**DEFENDANT:**
Sex: O

General Occupation: Automotive Repair

EXHIBIT C

Organization Type: North Ranch Bodycraft & Glass Inc.

**DAMAGES:**
Compensatory Pain & Suffering: $100,000

Compensatory Past Wages: $201,600

Total Compensatory Award: $301,600

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

EXHIBIT C

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: General Business Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: ADEA


**General Statute: Retaliation**
General Statute Discrimination: false

Specific Statute: Emotional Distress


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Final Offer: $250,000

Comparative Negligence Percentage: 0


**FACTS:**
Plaintiff Noe Argueta was a 62-year-old auto-body technician employed by defendant North Ranch Bodycraft & Glass Inc. He said he returned after a vacation of 2-3 weeks and found that he had been terminated and replaced by a younger employee.

The plaintiff reportedly suffered emotional distress, resulting in a stoke.

The plaintiff alleged age discrimination, retaliation and failure to prevent discrimination and retaliation under the Fair Employment and Housing Act (FEHA), as well as wrongful termination in violation of public policy.

The plaintiff sought past lost income of approximately $189,475, future lost wages of $303,160, emotional distress/general damages exceeding $1,000,000, punitive damages in excess of $1,000,000 and attorney fees of over $350,000.

EXHIBIT C

The defendant denied liability and disputed damages. It claimed the plaintiff was not terminated, but quit, and the plaintiff did not complain about age discrimination.

Jurors found in favor of the plaintiff in the age discrimination claim.

The court later granted the defendant's motion for a new trial.

Jury Verdict Research
COURT: Superior

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C